468 So.2d 1014 (1985)
Betty MONTGOMERY and Gussie Williams, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. BD-290.
District Court of Appeal of Florida, First District.
April 15, 1985.
Rehearing Denied June 4, 1985.
*1015 Melanie Malherbe, Orlando, and Michael A. Campbell, Barton, for appellants.
Harden King, Tallahassee, for appellee.
PER CURIAM.
Appellants, who are recipients of food stamps, appeal a final order of the Division of Administrative Hearings dismissing, for lack of standing, their challenge to proposed Rule 10C-3.60, Florida Administrative Code, which establishes the terms under which food stamp recipients may be required to participate in a workfare program.[1] Although by its terms, Rule 10C-3.60 purports to be effective throughout the state, the rule will be utilized in only two counties at present, since the legislature has appropriated only enough funds to continue or establish workfare projects in two counties, rather than statewide.[2] Further implementation will take place only when and if specifically authorized by legislative action. Orange County, appellants' residence, is not one of the two counties in which a workfare program will be instituted. On these facts we conclude, contrary to the decision of the hearing officer, that appellants have standing to challenge the proposed rule. Nevertheless, we affirm the dismissal of appellants' rule challenge on the grounds of mootness for the reasons set forth below.
Appellants are heads of households and would likely be affected by the implementation of workfare in Orange County. They timely filed their petition challenging the validity of proposed Rule 10C-3.60 on August 10, 1984.[3] At the time they filed their petition, it was still uncertain which counties would be participating in workfare. Counties interested in participating were required to express their interest in writing to the Department of Health and Rehabilitative Services (HRS) on or before September 1, 1984. Orange County did not express *1016 an interest in writing by that date, thus eliminating any immediate concern that appellants may be subjected to workfare.
In Florida, the courts have adopted the federal "injury-in-fact" test governing standing, Department of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978), and the federal "zone of interest" test where applicable. Florida Medical Association, Inc. v. Department of Professional Regulation, 426 So.2d 1112 (Fla. 1st DCA 1983).[4] In this case, we are only concerned with whether appellants have met the injury-in-fact test.
To have standing, appellants were required to show an injury which is both real and immediate, not conjectural or hypothetical. Jerry, supra, at 1235. When appellants filed their rule challenge petition, they were heads of households who would likely be subjected to the terms of workfare under proposed Rule 10C-3.60. Under the circumstances as outlined in their petition, the injury they would suffer if Rule 10C-3.60 was promulgated was real and immediate, not conjectural. Since it appeared that HRS was about to devise the terms under which workfare would be implemented statewide in Florida, persons subjected to workfare under those terms would have standing to challenge the proposed regulation. See, Professional Firefighters of Florida, Inc. v. Department of Health and Rehabilitative Services, 396 So.2d 1194 (Fla. 1st DCA 1981) (firefighters, performing paramedic duties which were not previously subject to statewide regulation or licensing, held to have standing to challenge agency's proposed new licensing or certification requirement).
However, notwithstanding the fact that the proposed rule purports to be slated for statewide application, we are not required to close our eyes to the fact that in actual effect, only a pilot program has been implemented by legislative appropriation of start-up funds, and that food stamp recipients in Orange County where appellants reside will not be subject to the pilot program. Accordingly, even though we find that appellants have standing to challenge the proposed rule, the fact that workfare will not be implemented in Orange County raises the issue of mootness. State Department of Health and Rehabilitative Services v. Alice P., 367 So.2d 1045, 1053 (Fla. 1st DCA 1979).
Mootness has been defined as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973), quoted with approval in United States Parole Commission v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479, 491 (1980). Mootness occurs in two basic situations: "[W]hen the issues presented are no longer `live' or [when] the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491, 502 (1969).
A case becomes moot, for purposes of appeal, where, by a change of circumstances prior to the appellate decision, an intervening event makes it impossible for the court to grant a party any effectual relief. 3 Fla.Jur.2d, Appellate Review, § 287, p. 337. Mootness can be raised by the appellate court on its own motion. DeHoff v. Imeson, 153 Fla. 553, 15 So.2d 258 (1943); Barrs v. Peacock, 65 Fla. 12, 61 So. 118 (1913). The rule discouraging review of moot cases is derived from the requirement of the United States Constitution, Article III, under which the existence of judicial power depends upon the existence of a case or controversy. Liner v. Jafco, Inc., 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). It is the function of a judicial tribunal to decide actual controversies *1017 by a judgment which can be carried into effect, and not to give opinions on moot questions, or to declare principles or rules of law which cannot affect the matter in issue. 2 Am.Jur.2d, Administrative Law, § 572, p. 389.
If this court were to remand this case to the hearing officer for a determination of the validity of proposed Rule 10C-3.60, any eventual determination would have no present effect on appellants. Thus, our opinion follows the general principle of current ripeness law: that a regulation "is ripe for challenge when an affected person has to choose between disadvantageous compliance and risking sanctions." 4 Davis, Administrative Law Treatise, Section 25:13 (2d Ed. 1983). The two appellants in the case at bar are not confronted with that choice and, therefore, they cannot receive effectual relief. For appellants to be subjected to Rule 10C-3.60's terms, additional funding must be appropriated beyond that available for the two counties envisioned by the General Appropriations Act, Orange County must opt for participation in the workfare program, appellants must be residing in Orange County when the first two events occur, and appellants must still have the status of heads of households subject to the terms of the rule.[5]
Appellants argue that this court may still grant them some effectual relief by returning this case to the hearing officer because should the hearing officer hold that proposed Rule 10C-3.60 is invalid, that will mean appellants will not be subject to the rule when and if workfare is implemented in Orange County. We decline to accept appellants' invitation given the uncertainty that the above enumerated events will occur in such a sequence so as to subject appellants to workfare. Should workfare be eventually initiated in appellants' county and appellants be subject to the terms of the rule at that time, appellants may initiate a rule challenge pursuant to Section 120.56, Florida Statutes.
Finally, we recognize that in the case at bar, the substantive issues regarding the validity of proposed Rule 10C-3.60 are still "live" ones between HRS and those individuals who would be "substantially affected" in the two counties where workfare will be implemented. Here, of course, appellants filed their rule challenge only on their own behalf; and even had they attempted to assert the interests of others, the fact that the issues raised are moot as to appellants requires dismissal. See Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The only relevant exception to the general rule of mootness can be found in Sosna and its progeny, wherein the Supreme Court has held that a federal class action suit does not ordinarily become moot merely because the controversy has become moot as to some, but not all, of the plaintiffs, provided that the requirements for class suits, as stated in Federal Rule of Civil Procedure 23 have been met. Sosna, 419 U.S. at 399-403, 95 S.Ct. at 557-559; Geraghty, 445 U.S. at 396-399, 100 S.Ct. at 1208-1210. Those cases allow the requisite "controversy" to exist, at the time of appellate review, "between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." Sosna, 419 U.S. at 402, 95 S.Ct. at 559. See also Craig v. Boren, 429 U.S. 190, 192, 97 S.Ct. 451, 454, 50 L.Ed.2d 397, 403 (1976). Although the substantive issues remain in the case at bar as to substantially affected individuals in the two counties where workfare will be implemented, and those individuals could supply the requisite controversy, "a proposed rule challenge is not, under Florida law, a proper proceeding for the maintenance of a class action." State, Department *1018 of Health and Rehabilitative Services v. Alice P., 367 So.2d 1045, 1050 (Fla. 1st DCA 1979). Cf. Medley Investors, Ltd. v. Lewis, 465 So.2d 1305 (Fla. 1st DCA 1985).
In that appellants cannot fall under the class action suit exception to the mootness doctrine, the survival of the substantive claims as to others does not save this case from dismissal as to appellants on the ground of mootness.
AFFIRMED.
ERVIN, C.J., and SMITH and NIMMONS, JJ., concur.
NOTES
[1] "Workfare is a component of the joint federalstate Food Stamp Program requiring food stamp recipients to perform labor at government work sites equivalent to the value of their food stamp allotments. State implementation of workfare is not mandatory but, if elected, must be conducted consistent with federal regulations." Perkins v. Department of Health and Rehabilitative Services, 452 So.2d 1007, 1008 (Fla. 1st DCA 1984).
[2] Line Item 764, 1984 General Appropriations Act, Ch. 84-220, Laws of Fla.
[3] Appellants' petition alleges the proposed rule is an invalid exercise of delegated legislative authority because it imposes workfare without legislative authorization, unconstitutionally delegates authority to the federal government, improperly incorporates nonexistent materials by reference, violates the Workfare Policy Act, Section 409.028, Florida Statutes (1983), and implements provision of the 1984 General Appropriations Act which is unconstitutional.
[4] The federal law of standing is complex, inconsistent, and unreliable. 4 Davis, Administrative Law Treatise, § 24:1 (Second Edition, 1983). The Florida law of standing borrows much of its underpinnings from the federal law and thus arguably may be said to be subject to the same vagaries.
[5] We have not overlooked the distinctions that may be made between rule-making under Section 120.54, and a rule challenge under Section 120.56. However, in the context of the present controversy, in which petitioners did not avail themselves of the opportunities for pre-adoption input by way of evidence or argument, or by participation at a public hearing on the proposed rule, we conclude that petitioners' claims of invalidity of the proposed rule (see footnote 3) can be as fully vindicated in a rule challenge proceeding as in the rules' formative stage.