956 So.2d 470 (2007)
STATE of Florida, Petitioner,
v.
Roy P. BALLARD, Respondent.
No. 2D07-407.
District Court of Appeal of Florida, Second District.
February 23, 2007.
Rehearing Denied May 18, 2007.
Jerry Hill, State Attorney, and Victoria J. Avalon, Assistant State Attorney, Bartow; and Bill McCollum, Attorney General, Tallahassee, and Robert J. Krauss, Assistant Attorney General, Tampa, for Petitioner.
Byron P. Hileman, Winter Haven, for Respondent.
WALLACE, Judge.
The State Attorney for the Tenth Judicial Circuit seeks a writ of prohibition to prevent a circuit judge from continuing to preside over a first-degree murder case that is pending in the Circuit Court for Polk County. Upon a careful review of the motion filed in the circuit court for disqualification of the judge, we conclude that the motion was legally sufficient. Accordingly, the circuit judge should have granted the motion and disqualified herself, and we grant the state attorney's petition.

Background
The defendant in the proceedings below is Roy P. Ballard, who is currently sixty-five years of age. The Grand Jury in and for Polk County indicted Mr. Ballard *471 for first-degree murder, a capital felony, on October 19, 2006. The case was assigned to the Honorable Susan W. Roberts. The State promptly filed a notice of intent to seek the death penalty against Mr. Ballard. The events pertinent to our consideration of the state attorney's petition occurred at a status conference in Mr. Ballard's case that was conducted by Judge Roberts on January 17, 2007. The persons present at the status conference included Mr. Ballard; his attorney, Byron P. Hileman, Jr.; and an assistant state attorney, Victoria Avalon. An account of the events at the status conference follows. This account is based on the State's sworn motion for disqualification and on the court reporter's transcript of the proceedings.

The Events at the Status Conference
When the status conference was held, Mr. Ballard's case was scheduled for trial during a three-week trial block beginning March 19 and ending April 6, 2007. Mr. Hileman had only recently been appointed to represent Mr. Ballard after other counsel had withdrawn. After a discussion of unrelated matters, Mr. Hileman informed the court that the State was seeking the death penalty against Mr. Ballard. Mr. Hileman advised the court further that unless the State changed its position about seeking the imposition of the death penalty, he could not be ready to proceed with the penalty phase of the case in only two months when the case was then scheduled to go to trial. Ms. Avalon then confirmed to the court that the State was pursuing the death penalty against Mr. Ballard.
Immediately thereafter, Judge Roberts engaged Mr. Ballard in the following colloquy:
THE COURT: You're still 65. How old are you now?
THE DEFENDANT: I'll be 66 in May.
Judge Roberts then turned to Mr. Hileman and said: "Could be . . . Well, you can imagine what I might be thinking." After receiving an affirmative response from Mr. Hileman, Judge Roberts turned to Ms. Avalon and addressed her as follows: "Okay. Is [sic] that might be a waste of the State's resources. You might want to reevaluate given his advanced age." Ms. Avalon made a noncommittal, but respectful, response: "I'll make a note of that, Your Honor."
After these remarks, the court and the attorneys had further discussions about scheduling the case for trial. Mr. Hileman emphasized the additional time and resources that he would need to prepare for trial if the State persisted in pursuing the death penalty against Mr. Ballard. Judge Roberts then turned to Ms. Avalon and engaged her in the following colloquy:
THE COURT: Okay. What would be a reasonable time for the State to go get [the case] reevaluated?
MS. AVALON: With respect to whether or not we're seeking the death penalty?
THE COURT: Right.
MS. AVALON: As far as I'm concerned we're not going to abandon that position unless Mr. Hill [the State Attorney] himself says otherwise. However, I'll discuss that with him as soon as I can.
After further discussion, the court and the parties agreed to set another status conference in two weeks, on January 31, 2007.
As the January 17 status conference was drawing to a conclusion, Mr. Hileman announced that he would be filing a motion to continue the trial of the case. Judge Roberts then engaged Mr. Hileman in the following colloquy:
THE COURT: Well, I don't want to do that because there's a bunch of possibilities *472 here. You said that you could be prepared for it if all you had to prepare for is the guilt phase.
MR. HILEMAN: That's a possibility, Judge.
THE COURT: And there's a possibility, maybe not a probability, but a possibility that the State's not going to seek the death penalty. So, let's see how that plays out.
MR. HILEMAN: All right. We'll leave it on for now. And I'll file a motion later if I feel I need to.
THE COURT: All right. . . . And we'll see you on the 31st at 8:30.
MR. HILEMAN: Thank you, ma'am.
With that, the status conference was concluded.

The State's Motion for Disqualification
The next day, the State filed a motion to disqualify Judge Roberts in accordance with Florida Rule of Judicial Administration 2.330. In its motion, the State claimed that Judge Roberts' "comments regarding the suitability of the death penalty in [Mr. Ballard's] case show that the Court had prejudged the decision regarding the death penalty in this matter." In addition, the State asserted that the remarks that Judge Roberts directed to Ms. Avalon, "particularly [her] instruction . . . to have the State's intent to seek the death penalty reevaluated, create an appearance that [Judge Roberts] would disregard a death recommendation." The State concluded that Judge Roberts' statements at the status conference displayed a disposition to rule on a matter before hearing the evidence that raised "a reasonable fear of partiality."
On January 26, 2007, Judge Roberts entered an order that found the State's motion to be legally insufficient and denied it. The state attorney promptly filed his petition for writ of prohibition in this court. After a preliminary review of the petition and Mr. Ballard's response, this court entered an order staying further proceedings in the circuit court pending a ruling on the petition.

Discussion
Our review of the order denying the motion for disqualification is under a de novo standard. See Frengel v. Frengel, 880 So.2d 763, 764 (Fla. 2d DCA 2004). In reviewing the circuit court's order, "`[o]ur task on appeal is to determine the legal sufficiency of the motion based on whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial.'" Id. (alteration in original) (quoting Hayes v. State, 686 So.2d 694, 695 (Fla. 4th DCA 1996)). If the motion was legally sufficient, then Judge Roberts was required to immediately enter an order granting disqualification and to proceed no further in the case. Fla. R. Jud. Admin. 2.330(f). The pertinent inquiry is not whether the judge perceives himself or herself as able to act fairly and impartially, but whether a party may reasonably question the judge's partiality. See Livingston v. State, 441 So.2d 1083, 1086 (Fla.1983).
With these principles in mind, we have carefully reviewed the State's petition, its motion to disqualify Judge Roberts, the transcript of the status conference, and the response filed by Mr. Hileman on Mr. Ballard's behalf. After completing this careful review, we have concluded that the challenged remarks made by Judge Roberts at the status conference may be reasonably interpreted in at least two different ways.
On the one hand, when the status conference was held, the trial of the first-degree murder case against Mr. Ballard was scheduled to begin in only two months. Mr. Hileman had only recently *473 been appointed to the case, and he needed a reasonable amount of time to prepare for trial. With commendable candor, Mr. Hileman informed the court that he could probably be ready to proceed with the guilt phase of the trial on the scheduled date but that he did not have sufficient time or resources to prepare for the penalty phase if the State was actually going to seek the death penalty. Thus the question of whether the State would continue to pursue the death penalty against Mr. Ballard was critical to determining whether the case could proceed to trial as scheduled or if a continuance would be necessary. Judge Roberts' remarks appear to have been intended to encourage the State to make a realistic assessment of the case so that the court and the attorneys could intelligently address the scheduling issue. Viewed in the context of the scheduling problem that was the main subject of the status conference, one may reasonably interpret Judge Roberts' comments as intended to facilitate the fair and efficient administration of the case against Mr. Ballard, not as reflecting a prejudgment about whether life in prison without the possibility of parole  instead of death  would be the appropriate penalty if Mr. Ballard were convicted of first-degree murder.
On the other hand, we cannot overlook other implications that are inherent in Judge Roberts' remarks. After raising the issue of Mr. Ballard's age on her own, Judge Roberts invited the attorneys to "imagine" what she might be thinking. This invitation was followed immediately by Judge Roberts' observation directed to Ms. Avalon that pursuing the death penalty in Mr. Ballard's case "might be a waste of the State's resources." Judge Roberts continued this theme by instructing Ms. Avalon to have the case reevaluated "given [Mr. Ballard's] advanced age." Under these circumstances, we cannot say that the State could not reasonably conclude that Judge Roberts' remarks reflected a prejudgment on the issue of whether it would be appropriate to impose the death penalty in Mr. Ballard's case. The State's fear that Judge Roberts had prejudged the question of the appropriateness of the death penalty was thus a reasonable fear, and that fear was a legally sufficient reason for the judge's disqualification. See Konior v. State, 884 So.2d 334, 335 (Fla. 2d DCA 2004); Pierce v. State, 873 So.2d 618, 620 (Fla. 2d DCA 2004). Accordingly, Judge Roberts should have entered an order disqualifying herself in Mr. Ballard's case.

Conclusion
For these reasons, we grant the petition for writ of prohibition, we vacate the stay of the circuit court proceedings that we previously imposed, and we direct the circuit judge to grant the motion for disqualification and to recuse herself from further proceedings in the case against Mr. Ballard.
Petition granted; stay vacated.
CANADY, J., Concurs.
VILLANTI, J., Concurs specially with opinion.
VILLANTI, Judge, Specially concurring.
I concur fully in Judge Wallace's majority opinion but write separately to point out that the trial judge has inherent authority to make a pretrial determination on whether Mr. Ballard was legally ineligible to receive the death penalty. Trial judges across this state make this determination on a regular basis without being required to recuse themselves. See State v. Steele, 921 So.2d 538, 543 (Fla.2005) (holding that "a trial court does not violate a clearly established principle of law in requiring the State to provide [advance] notice [of *474 aggravating circumstances]"). It certainly would be a waste of resources, including court calendar time and defense counsel preparation, to death-qualify a jury if the facts alleged by the State did not legally support at least one statutorily required aggravator. As noted in Mr. Ballard's response, to death-qualify a jury without such legal authority can constitute reversible error. See Reed v. State, 496 So.2d 213 (Fla. 1st DCA 1986). However, as explained below, the trial judge was not attempting to comply with Reed when she made the objectionable comments.
In fact, there was no inquiry advanced at the status hearing even remotely resembling a Reed-type concern. At no time did either the trial judge or defense counsel ever question the factual applicability of the cold, calculated, and premeditated aggravator (CCP) alleged by the State.[1] Rather, the overture opined by the judge was whether it "might be" a waste of resources to seek to impose the death penalty on an individual sixty-five years of age. In so doing, the judge espoused a personal view on how the State should devote its resources that was unrelated to whether there was a legal basis for the State to seek the death penalty. Ironically, the judge's probing focused on a factor which, based on the record before us, might not even constitute significant mitigation in this case.[2] Furthermore, because of the weighing process involved in death penalty cases, this should not be a concern for the court until after the penalty phase becomes necessary.
Section 921.141(6)(g), Florida Statutes (2006), provides that age[3] is a mitigating circumstance, although "where the defendant is not a minor, i.e., under eighteen, `no per se rule exists which pinpoints a particular age as an automatic circumstance in mitigation. Instead, the trial judge is to evaluate the defendant's age based on the evidence adduced at trial and at the sentencing hearing.'" Hurst v. State, 819 So.2d 689, 697-98 (Fla.2002) (emphasis supplied) (quoting Shellito v. State, 701 So.2d 837, 843 (Fla.1997)). "Determining whether a mitigating circumstance exists and the weight to be given . . . are matters within the discretion of the sentencing court." Id. at 697. Analyzing Mr. Ballard's age at the point the judge did here is problematic not only because case law requires this discretionary assessment be made at the conclusion of all evidence and any penalty phase, but also because age is typically used as mitigation in youthful defendant cases only. Thus, there is a paucity of precedent guiding the use of age in nonyouthful defendant cases such as Mr. Ballard's. This precedent or any of its underlying considerations was also not discussed in relation to the judge's comments.
In order for age to be legally significant mitigation in "older aged" defendant cases *475 in Florida, the defendant's age must be tethered to another factor such as mental health, retardation, or senility.[4] Otherwise, age "is simply a fact, every murderer has one," and "if it is to be accorded any significant weight, it must be linked with some other characteristic of the defendant or the crime." Echols v. State, 484 So.2d 568, 575 (Fla.1985). Therefore, without noting below whether Mr. Ballard actually suffers from some other factor tied to his age, the trial judge's suggestions may or may not have been an accurate anticipation of whether his age could be significant mitigation. Even so, it was improper and not just prematurely suggestive for the judge to address an atypical specific mitigating factor in such a forceful manner, especially before the State presented its side. In the context of the proceeding below, the trial judge's musings, even if innocuously made as suggested by defense counsel, became a judgmental comment that defense counsel should argue this particular mitigator to the jury and to the sentencing judge when and if a penalty phase occurs.
If the recusal test were that the comments must show that the judge would in fact not impose the death penalty in this case, then this would perhaps be a closer question. However, as noted by the majority, that is not what is required  the standard is much lower.[5] Therefore, the State cannot be faulted for its view of the judge's comments because, right or wrong, there is no way to quantify the potential for prejudice, especially in a death case.[6] Moreover, inherent in the State's position is the precept that a decision not to impose the death penalty, even after giving the required great weight to a jury's recommendation, is not reviewable on appeal. Only a judge's decision to override a jury's recommendation of life is appealable.[7] These prospects emphasize why a showing of actual prejudice should not be necessary, even when applying death-is-different considerations, in this case.
In conclusion, while it was certainly proper for defense counsel to attempt to ascertain whether the State would adhere to its initial assessment to seek the death penalty, the manner and mode chosen by the trial judge to answer this query was ill-advised. The judge, without being prompted by either side, improperly expanded the inquiry to include a specific consideration of Mr. Ballard's age. Finally, by sua sponte requiring the State under the circumstances of the hearing below to address this court-generated concern, the judge also infringed upon the executive domain of the state attorney, whose office is entitled to strategize unfettered within the boundaries of its policies and duty to *476 follow the law. To infer without articulable record reason that this separate, independent entity had not, or might not, make an appropriate legal decision, if not reminded by the court to do so, was presumptuous.
NOTES
[1] Although there may be constitutional impediments to the use of CCP in varying factual patterns, such a situation was not argued below or otherwise raised at this particular hearing. For our purposes, it is sufficient to note that CCP is a constitutional aggravator on its face. Donaldson v. State, 722 So.2d 177, 187 n. 12 (Fla.1998).
[2] I assume the trial court did not intend to advance an argument prohibited by Hitchcock v. State, 578 So.2d 685, 689-90 (Fla.1990) (pointing out the irrelevancy of an argument that it costs more to carry out a death sentence than to impose a life sentence), rev'd. on other grounds, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).
[3] Defendants who are less than eighteen years of age are death ineligible. See Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). However, there is no corresponding case law setting forth a bright-line age over which a defendant may not constitutionally be executed.
[4] Additionally, there are specific rules dealing with mental mitigation, retardation, and incompetence. Fla. R.Crim. P. 3.202, 3.203, 3.210.
[5] Even if the court had entered an order requiring the State to take the action to which the trial judge was alluding, recusal would still be appropriate because the comments went beyond a mere adverse ruling.
[6] For example, there is currently no requirement that the jury list what mitigation evidence it believed or the weight it gave any factor in rendering its advisory sentence. Section 921.141(2) requires the jury to deliberate only on which set of circumstances  aggravating or mitigating  cumulatively outweighed the other, § 921.141(2)(a)-(b), and "[b]ased on these considerations, whether the defendant should be sentenced to life imprisonment or death," § 921.141(2)(c).
[7] See, e.g., Tedder v. State, 322 So.2d 908, 910 (Fla.1975) (holding sentencing judge committed reversible error in imposing death sentence in lieu of the jury's recommendation of life because the facts did not suggest that "no reasonable person could differ" that death was the only appropriate sentence).