12 So.3d 266 (2009)
D.H., the Mother, in the Interest of J.R., a child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 1D08-3082.
District Court of Appeal of Florida, First District.
May 19, 2009.
Rehearing Denied June 26, 2009.
*267 Edith E. Sheeks and Octavia Edwards, Assistant Regional Counsels, Office of Regional Conflict Counsel, Tallahassee, for Appellant.
Jennifer S. Paullin, Appellate Counsel for Guardian ad Litem Program, Orlando; and Anthony C. Musto, Special Counsel for Florida Department of Children & Families.
BROWNING, J.
D.H. (Appellant), the mother of three-year-old J.A.R., appeals the circuit court's final order terminating her parental rights and committing the child to placement in the custody of Appellee, the Florida Department of Children and Families (Department), for the purpose of adoption. Appellant seeks a reversal of the termination order and a remand for further proceedings before a different trial judge based on allegations 1) that the trial court erred as a matter of law by denying Appellant's motion to disqualify the judge; 2) that the court abused its discretion by denying a motion to continue the proceedings for 45 days to allow Appellant to have another psychiatric evaluation; and 3) that the evidence completely contradicts the court's conclusion that Appellant did not substantially comply with her case plan despite Department's making reasonable efforts to assist her toward reunification with the child. Because we conclude that the "disqualification" issue is dispositive and the trial court reversibly erred by denying the motion for disqualification, we are constrained to reverse the order terminating Appellant's parental rights and to remand for further proceedings in the circuit court in front of a different judge. Our disposition of the appeal on this ground effectively moots the issue concerning Appellant's lack of time to submit to another psychiatric evaluation and the denial of the motion for continuance.
Appellant herself was adjudicated dependent and was a minor when the child in question was born. The child was adjudicated dependent in 2006 and placed in Department's custody for appropriate foster care placement. The trial court approved a child welfare case plan in 2006 with the goal of reunification. More than one year later, Department initiated proceedings against Appellant pursuant to section 39.806(1), Florida Statutes (2007), which states several grounds for terminating parental rights. Grounds for termination may be shown:
[when] the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
§ 39.806(1)(c), Fla. Stat. (2007). Department's petition for termination alleged that Appellant's continuing involvement in the parent-child relationship endangered the child's safety and well-being, in that, irrespective of the provision of services, Appellant failed to understand the appropriate parenting skills necessary to care for her child. Department alleged that the evidence would prove that Appellant is incapable of meeting her child's daily needs. Specifically, Department contended that Appellant's intellectual deficits, mixed personality disorder, and parenting skills deficiencies created an unacceptable risk of abuse and/or neglect of her child.
Section 39.806(1)(e)1, Florida Statutes (2007), sets out the following circumstances *268 as another proper ground for termination of parental rights:
When a child has been adjudicated dependent, a case plan has been filed with the court, and:
The child continues to be abused, neglected, or abandoned by the parents. In this case, the failure of the parents to substantially comply for a period of 12 months after an adjudication of the child as a dependent child or the child's placement into shelter care, whichever came first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department to make reasonable efforts to reunify the parent and child. The 12-month period begins to run only after the child's placement into shelter care or the entry of a disposition order placing the custody of the child with the department or a person other than the parent and the approval by the court of a case plan with a goal of reunification with the parent, whichever came first....
Department's petition alleged that, notwithstanding the approval of a child welfare case plan for Appellant with the goal of reunification, the child continued to be abused, neglected, or abandoned by Appellant, in that she had failed to comply substantially with the case plan in five material respects. The petition stated that Department would show, using the criteria set forth in section 39.810(1)-(11), Florida Statutes (2007), that it is in the child's manifest best interests for Appellant's parental rights to be terminated and for the child to be permanently committed to Department's custody for subsequent adoption.
On May 1, 2008, the child's father executed a surrender, consent, and waiver of notice for termination of his parental rights pursuant to section 39.0806(1)(a), Florida Statutes (2007). Only Appellant's parental rights are involved in this appeal. The trial court scheduled a pretrial conference for May 13, 2008, and the adjudicatory hearing on the termination petition for May 27, 2008. On May 6, 2008, Appellant's counsel filed a specific discovery request to Department as part of an attempt to locate a copy of Appellant's psychiatric evaluation. At the May 13 pretrial conference, Department's counsel acknowledged the discovery request and admitted that the evaluation could not be located. The attorneys informed the court that Dr. Mandoki, who had performed the evaluation two years earlier, did not retain a copy and had no independent recollection of the evaluation or results. Appellant's counsel considered this missing evaluation to be a significant item of evidence.
On May 14, 2008, counsel for Appellant filed a motion for a 45-day continuance to allow time to arrange an independent, updated psychiatric evaluation of Appellant and to allow the presentation of witnesses at the adjudicatory hearing who could report on Appellant's current psychiatric status. The lawyers were allowed to argue in support of, or against, the motion. Concluding that the Florida Legislature has mandated the expeditious handling of proceedings to establish permanency for children in dependency and that Appellant's counsel's office had not used due diligence and shown good cause, the trial court orally denied the motion for continuance. See § 39.0136(1), (2)(b)1. & (3), Fla. Stat. (2007); R.S. v. Dep't of Children & Families, 956 So.2d 1242 (Fla. 4th DCA 2007). At that same pretrial conference, the trial judge noted on the record that he knows Appellant, who "has been in the foster care system herself for years," that she has had "very competent legal representation," and *269 that she is "a mother, well known to have psychiatric and psychological deficits." With these comments, the conference concluded.
On May 22, 2008, counsel for Appellant filed a timely, sworn motion to disqualify the trial judge essentially on three main grounds. First, the motion alleged Appellant's belief that she would not get a fair adjudicatory hearing because the judge, having presided repeatedly over Appellant's earlier proceedings, was biased or prejudiced against her based on his knowledge of Appellant's and her child's history in the dependency system. § 38.10, Fla. Stat. (2007) ("Whenever a party to any action or proceeding makes and files an affidavit stating fear that he or she will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the appellant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes in which the presiding judge is disqualified."). Second, Appellant alleged that the judge's remarks at the pretrial conference suggested that the court had prejudged her mental health status and predetermined the merits of the case before hearing all the evidence, compelling his removal under Florida Rule of Judicial Administration 2.330(d)(1) (requiring a motion for disqualification to show "that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge"). See also § 38.10, Fla. Stat. (2007). Third, the motion alleged that the judge "is a material witness for or against one of the parties to the cause," requiring his disqualification under Florida Rule of Judicial Administration 2.330(d)(2) (requiring the motion to show "that the judge before whom the case is pending ... is a material witness for or against one of the parties to the cause"). See also § 38.02, Fla. Stat. (2007). A "material witness" is one who "gives testimony going to some fact affecting the merits of the cause and about which no other witness might testify." Wingate v. Mach, 117 Fla. 104, 157 So. 421, 422 (1934); Rodriguez v. State, 919 So.2d 1252, 1276 (Fla.2005). In support of this third ground, the motion alleged that, given the denial of the motion for continuance, the trial judge "may be a material witness to establish the existence of a missing psychiatric evaluation performed on the Mother during a previous case involving the Mother before this Court." Further, the motion alleged that Appellant may require the judge's testimony concerning Appellant's prior legal representation and another of Appellant's children.
Whereas the statutes provide the substantive right to move for disqualification, the rules set out the procedural requirements. See Cave v. State, 660 So.2d 705, 707 (Fla.1995); MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332, 1334 (Fla.1990); Livingston v. State, 441 So.2d 1083, 1086-87 (Fla.1983). In Douglass v. Douglas, 633 So.2d 1166 (Fla. 1st DCA 1994), we stated:
Section 38.02 contemplates that the judge will determine the truth of the suggestion to disqualify. This is in contrast to a motion for disqualification for prejudice under section 38.10 where the judge may not pass on the truth of the allegations.
Id. at 1167. Florida Rule of Judicial Administration 2.330(f) circumscribes the trial court's consideration of such motions as follows:
(f) Determination  Initial Motion. The judge against whom an initial motion to disqualify under subdivision *270 (d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. If the motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion.
"A verified motion for disqualification must contain an actual factual foundation for the alleged fear of prejudice." Fischer v. Knuck, 497 So.2d 240, 242 (Fla.1986); see Scholz v. Hauser, 657 So.2d 950, 951 (Fla. 5th DCA 1995). The facts alleged in the motion must be taken as true by the trial judge when ruling on the motion. See Sleiman v. Sleiman, 975 So.2d 533, 535 (Fla. 1st DCA 2008). The trial court has a duty to determine whether the factual allegations are "reasonably sufficient to create a well founded fear that the moving party would not receive a fair trial." Kowalski v. Boyles, 557 So.2d 885, 886 (Fla. 5th DCA 1990); see Rodriguez, 919 So.2d at 1274; MacKenzie, 565 So.2d at 1335; Paletti v. Corbin, 717 So.2d 1056, 1056 (Fla. 1st DCA 1998) (concluding that allegations of bias in motion for disqualification "were sufficient to establish that a reasonably prudent person would fear that he would not receive a fair and impartial hearing before the judge"). A subjective fear of bias is insufficient to justify granting the motion; rather, the fear must be objective. See Puckett v. State, 591 So.2d 326, 327 (Fla. 5th DCA 1992); Fischer, 497 So.2d at 242.
It was not until May 27, 2008, the date when the adjudicatory hearing was scheduled for just minutes later that morning, that the trial court filed its order denying the motion for disqualification and provided a copy of the written order to counsel. The court correctly stated that neither prior rulings against a party nor the court's familiarity with the case and evidence from earlier proceedings, by itself, is a legally sufficient ground for disqualification. See Petition of Geisser, 554 F.2d 698, 706-07 (5th Cir.1977) (concluding that trial judge who had accepted accused's guilty plea was not required to disqualify himself as a material witness when the accused later petitioned for a writ of habeas corpus seeking specific enforcement of the plea bargain); Jackson v. State, 599 So.2d 103, 107 (Fla.1992); Heier v. Fleet, 642 So.2d 669 (Fla. 4th DCA 1994); K.H. v. Dep't of Health & Rehabilitative Servs., 527 So.2d 230, 232 (Fla. 1st DCA 1988) (recognizing the well-established principle that "adverse judicial rulings do not constitute sufficient grounds to disqualify a judge" and affirming denial of legally insufficient motion for disqualification alleging that the trial court, in a termination of parental rights proceeding, was prejudiced against movant/mother because the court had presided over numerous proceedings involving movant and had found movant's child to be dependent before directing that permanent commitment proceedings commence); Claughton v. Claughton, 452 So.2d 1073, 1074 (Fla. 3d DCA 1984); Wilisch v. Wilisch, 335 So.2d 861, 865-66 (Fla. 3d DCA 1976). Responding directly to the allegations as to why the trial judge may be a material witness at the adjudicatory hearing, the court denied that Appellant has personal knowledge concerning what the judge knows and remembers about the missing psychiatric evaluation and about Appellant's prior legal representation. Immediately before the adjudicatory hearing commenced, Appellant's counsel orally moved to amend the pretrial stipulation to allow the trial judge to be called as a witness for Appellant; the motion was denied without discussion.
*271 We have de novo review of the order denying the motion for disqualification. See Arbelaez v. State, 898 So.2d 25, 41 (Fla.2005); State v. Ballard, 956 So.2d 470, 472 (Fla. 2d DCA 2007). "If a judge attempts to refute the factual assertions in a motion for disqualification, he or she is deemed to have taken an adversarial role in the matter, which itself warrants disqualification." Frost v. Ward, 622 So.2d 597, 598 (Fla. 4th DCA 1993); see Bundy v. Rudd, 366 So.2d 440, 442 (Fla.1978); Hill v. Feder, 564 So.2d 609, 609 (Fla. 3d DCA 1990). By attempting to refute the factual allegations as to why the trial court may be biased and the only material witness who could fill in the gaps created by the missing psychiatric evaluation, the judge did more than determine the legal sufficiency of the motion for disqualification, and thereby created the "adversarial position" establishing grounds for him to grant the motion as a matter of law. See Cave, 660 So.2d at 708; MacKenzie, 565 So.2d at 1339; Martin v. State, 804 So.2d 360, 364 (Fla. 4th DCA 2001); Hill, 564 So.2d at 609; Scholz, 657 So.2d at 951. We reject the suggestion that the circuit judge was merely acknowledging "the status of the record," which occurred in Kowalski, 557 So.2d at 887. Cf. Niebla v. State, 832 So.2d 887, 888 (Fla. 3d DCA 2002) (finding no basis for disqualifying trial judge who classified defendant as a habitual violent offender and imposed 13 consecutive life terms for multiple felonies, where the court allegedly had prejudged the sentencing phase by asking the prosecutor, at a hearing on defendant's Florida Rule of Criminal Procedure 3.800(b) motion, what was the maximum permissible sentence, and the judge did nothing more than "state the status of the record" in orally denying the motion for disqualification).
Appellant notes an alternative basis for granting the motion. Unquestionably, Appellant's history of mental health deficits and her current mental health status were key components of Department's decision to initiate proceedings to protect the child and to provide services to Appellant to help mitigate and/or eliminate these deficiencies and assist her in complying substantially with the case plan. Department's suggestion that Appellant's mental deficits and psychiatric history "were not at issue in this case" is disingenuous, in that the main controversies at the termination hearing related to the nature and extent of Appellant's mental deficits and the question of whether, through the provision of services by Department, she currently was capable of substantially completing her case plan and functioning as an informed, safe, and effective parent of the child in question. Appellant's counsel's acknowledgment of Appellant's adverse mental health circumstances was the starting point, not the end, of the determination of whether one or more grounds for termination exist. At the pretrial conference, the judge's remarks that Appellant's legal representation had been very competent and that Appellant was well-known to have psychiatric and psychological deficits would have caused a reasonably prudent person to have a well-founded fear that the court was biased or predisposed against Appellant and had formed an opinion about her psychiatric or psychological status (and, by inference, about Appellant's ability to parent the child safely) before the evidence was presented at the adjudicatory hearing. See Ballard, 956 So.2d at 473 (concluding that the disqualification of a circuit judge presiding over a first-degree murder case of a sexagenarian defendant was warranted, where judicial comments at a pretrial status conference regarding the suitability and efficiency of the death penalty for a defendant of senior years could reasonably be construed as *272 showing the court had prejudged the decision regarding an appropriate sentence, and the judge's instructions to have the State re-evaluate its intent to seek the death penalty created the appearance the court would disregard a death recommendation); Holmes v. Goldstein, 650 So.2d 87 (Fla. 4th DCA 1995).
"[E]very litigant is entitled to nothing less than the cold neutrality of an impartial judge." State v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939); see Seay v. State, 286 So.2d 532, 544 (Fla.1973); Brown v. State, 885 So.2d 391, 393 (Fla. 5th DCA 2004). The trial court reversibly erred by denying the motion for disqualification. For these reasons, we are constrained to REVERSE the order terminating parental rights and to REMAND for further proceedings before a different trial judge.
We take this opportunity to address the Guardian Ad Litem's contention that, given the deleterious effect upon children resulting from delays in permanent placement, Appellant should have sought immediate review of the denial of her motion for disqualification by the usual means, a petition for the "extraordinary remedy" of a writ of prohibition. See Dep't of Children & Family Servs. v. J.C., 847 So.2d 487, 491 (Fla. 3d DCA 2002); Siegel v. State, 861 So.2d 90, 92 (Fla. 4th DCA 2003); Hill, 564 So.2d at 609; Philip J. Padovano, Florida Appellate Practice § 28.3 at 690 n. 11 ("Prohibition is an appropriate remedy to review the denial of a motion to disqualify the judge."). First, we note that in our decision in K.H., 527 So.2d at 231-32, the appellant/mother challenged the denial of the motion for disqualification in her plenary appeal of the final order terminating her parental rights, and we addressed the merits of the trial court's ruling on the "disqualification" issue before affirming that ruling. Thus, a petition for writ of prohibition is not the exclusive avenue for pursuing relief from the denial of a motion for disqualification. Second, given the exigencies of this case  apparently, the trial court delivered the denial order to counsel just minutes before the termination hearing was scheduled to begin  we believe that Appellant's decision to proceed with the termination hearing rather than delay the proceedings further by seeking a writ of prohibition, is reasonable under the particular circumstances. We find no procedural bar (nor have the appellees cited one) to our consideration of this issue on plenary appeal. See K.H.
REVERSED and REMANDED for further proceedings in front of a different trial judge.
BENTON, J., concurs; KAHN, J., concurs with opinion.
KAHN, J., concurring with opinion.
I concur in the judgment of the court based upon the narrow principle articulated in the majority opinion that a trial judge may not attempt to refute the factual assertions in a motion for disqualification. I am not persuaded by the judge's remarks about appellant's history. The reality on the ground of dependency courts dictates that many judges will have had protracted prior experience with those unfortunate parents and children who come before the judge. Because this case can be decided on the narrow ground that the trial judge improperly attempted to refute the allegations of the motion, I would go no further.