PER CURIAM.
By petition for writ of prohibition, Philip Morris USA, Inc., seeks review of the trial court’s order denying petitioner’s motion for disqualification. We have jurisdiction. See, e.g., Lusskin v. State, 717 So.2d 1076, 1077 (Fla. 4th DCA 1998). By order entered on June 27, 2012, we granted the petition for writ of prohibition and directed the lower tribunal to appoint a successor judge. We now write to explain our reasoning.
This Engle[1]-progeny wrongful death action was brought against Philip Morris in November 2007. After nearly five years of fiercely contested litigation, the trial of this action began on June 11, 2012, with Circuit Judge A.C. Soud presiding. On June 19, 2012, a hearing was held outside the presence of the jury regarding the admissibility into evidence of a 1971 videotape of Philip Morris’ former CEO, Joseph Cullman, in which Cullman suggests that lower birth weights caused by smoking may actually be desirable to some women who “might prefer having smaller babies.” During the hearing, Judge Soud made several statements which Philip Morris characterizes as being highly inflammatory and raising in Petitioner a reasonable fear of judicial bias. We agree that these remarks warrant Judge Soud’s disqualification.
*470 At the hearing, Judge Soud made several remarks comparing Philip Morris’ former CEO to Dr. Josef Mengele, the infamous Nazi war criminal known as the “Angel of Death.”[2] Philip Morris argues that these remarks have caused it to reasonably question Judge Soud’s ability to remain impartial in this matter. The respondent, Mary Brown, asserts that, considered in context, the remarks demonstrate that Judge Soud does not himself believe Mr. Cullman to be comparable to Dr. Mengele. Instead, as Brown argues, Judge Soud was simply observing that this is a comparison that the jury could potentially draw.
The record before us reflects that Judge Soud’s unedited remarks are, as follows:
“Let me tell you what I’m thinking, where I’m leaning. I’m leaning about letting it in to show — I think it bears on — I’m not saying they are. I’m saying what one of the possible verdicts could be in this case. And if they were to find liability on the substantive charge, this type of statement could be used to assess punitive damages, because what it shows, when considered — and I’m going to use a phrase that one of my mentors used when I came on the bench in 1981, a great judge here in Duval County. “Whenever there are questions, legal questions — you know, like just like pulling this out of thin air, you would have serious questions. But when you look with the totality of the circumstances— old Judge Goodfriend — when you — he says on those tough issues of evidence or whatever, look at the totality of the evidence, what has come in before, what is anticipated.
“And when you consider in the light of all the evidence in the case, what this jury could find — I’m not saying they are, but what they could find is that Philip Morris has a very callous attitude toward people’s lives, toward serious illnesses and death that can come on their customers; that it’s been going on, at least our time, since the '40s, late '40s and '50s; that when you hear some of the evidence — that’s what I’m considering, some of the totality of circumstances, some of these memoranda that talk about concealing it, finding excuses for it.
“And then this gentleman — this gentleman says — it almost reminds me of Dr. Mengele — I’m not saying he is — of almost Dr. Mengele during World War II that wanted to use chemicals and different type things to alter — genetic altering of people.
“I’m not saying it’s that serious, but what I am saying, if you listen to his attitude, his attitude would be, ‘Well, yes, we injected nicotine into these ladies, and — these pregnant young women — and we know they’re going to have small babies,’ and therefore it sort of justifies it.
*471 “And that attitude is reprehensible. It may be that some of the young ladies, pregnant ladies that he wanted to give— they’re giving their cigarettes to, the jury could find that they — instead of a cheerleader, they’d like a Tony Boselli. “And it’s — to take his attitude, it’s ‘we know we’re dealing with a bad side. You may — smoking our product may give you a small child.’ It’s almost outside alteration of the genetic structure of the baby. And I think it’s permissible.
“Now, that’s where I’m strongly inclined to go.”
Philip Morris orally moved to disqualify Judge Soud. Judge Soud denied the motion on the record, stating:
“Your motion’s overruled — motion’s denied and objection’s overruled. And if it gets that far, they will say I’m making— I’m the one hearing the case and the record is in front of me. It’s replete.”
On June 20, 2012, Philip Morris made a renewed motion for disqualification in writing, which was denied the same day. The following morning, June 21, 2012, Philip Morris petitioned this court for prohibition.
As an initial matter, we note that this is Philip Morris’ first motion for disqualification. Thus, if the motion to disqualify was legally sufficient, under Florida Rule of Judicial Administration 2.330, Judge Soud was required to enter an order of disqualification. The standard of review for the legal sufficiency of a motion to disqualify is de novo. See R.M.C. v. D.C., 77 So.3d 234, 236 (Fla. 1st DCA 2012). “A motion is legally sufficient if it alleges facts that would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial.” Id. (quoting MacKenzie v. Super Kids Bargain Store, Inc., 565 So.2d 1332 (Fla.1990)).
Our de novo review of the motion below shows that it was legally sufficient to warrant disqualification. The petitioner is not seeking disqualification because the trial judge admitted into evidence the 1971 video of the petitioner’s former CEO. Rather, disqualification was sought based on statements made by the trial judge to explain his ruling and, then, to explain his statements. We find the trial judge’s statements were so inflammatory that a party would be placed in reasonable fear of judicial bias sufficient to warrant disqualification.
Although Judge Soud employed qualifying statements, such as “I’m not saying it’s that serious” or “I’m not saying he is,” we believe that a reasonably prudent person would nevertheless be placed in fear of judicial bias. Put simply, no amount of qualifiers negate the fact that the trial judge made the connection between Petitioner’s former CEO and a Nazi war criminal, and remarked that this would be a plausible comparison for the jury to draw. Moreover, the transcript makes it clear that Judge Soud himself was, reminded of Dr. Mengele by Mr. Cullman’s remarks and that he was not merely speculating on what the jury might conclude.[3]
Petition granted.
VAN NORTWICK, LEWIS, and THOMAS, JJ., Concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. Dr. Mengele is best known for conducting horrific experiments on human subjects in the Auschwitz concentration camp during the Second World War. Among numerous other experiments, he experimented on over 1,500 sets of twins to research the effects of various bacteria, chemicals, and viruses on the human body. In these experiments, he injected one twin with the substance to be tested and then performed autopsies on both twins to compare the differences. See In the Matter of Joseph Mengele, Report to the Attorney General of the United States, Office of Special Investigations, Criminal Division (October 1992) 1, http://www.justice.gov/crimi nal/hrsp/archives/1992/10-01-92mengele-rpt. pdf ("Mengele was also notorious for performing grotesque pseudo-medical experiments on prisoners — children and adults alike — especially those who were twins.”); and Lucette Matalón Lagnado and Sheila Cohn Dekel, Children of the Flames: Dr. Josef Mengele and the Untold Story of the Twins of Auschwitz (Penguin 1992) 29-33, 70.

. Judge Soud’s remark that "it [the videotape] almost reminds me of Dr. Mengele” makes this clear. (Emphasis added).