**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850)488-6151**

April 11, 2017

**CASE NO.**: **1D16-5205**
L.T. No.: 2016-CA-2052

Dr. Erwin D. Jackson        v.        Leon County Elections
                                          Canvassing Board, et al.

Appellant / Petitioner(s),                  Appellee / Respondent(s)

**BY ORDER OF THE COURT:**

Petitioner, Erwin D. Jackson, filed a motion for rehearing on November 27, 2016. On February 9, 2017, we issued an order directing Petitioner to address whether his motion for rehearing should be considered moot. Petitioner responded to the order on February 10, 2017, conceding that his motion is moot.

Based on Petitioner's response, we deny the motion for rehearing as moot. See Montgomery v. Dep't of Health & Rehab. Servs., 468 So.2d 1014, 1016–17 (Fla. 1st DCA 1985) ("It is the function of a judicial tribunal to decide actual controversies by a judgment which can be carried into effect, and not to give opinions on moot questions, or to declare principles or rules of law which cannot affect the matter in issue.").

ROWE and KELSEY, JJ., concur. MAKAR, J., dissents with opinion.

MAKAR, J., dissenting on the denial of emergency motion for rehearing.

Lost in the shuffle of this election contest is the "Emergency Motion for Rehearing" of

Erwin D. Jackson, who points out the ways in which our appellate panel erred by *sua sponte* taking away his fundamental right to appeal the trial court's denial of his disqualification motion. Because this Court did so on its own volition without notice to him, Jackson's motion is more properly styled as an "Emergency Motion for *a Hearing*" as it is Jackson's first opportunity to defend himself against the unilateral termination of his appellate rights and the imposition of two new procedural requirements that conflict with precedent.

Jackson begins with an unassailable point: it is little solace to say his disqualification motion should have been granted but simultaneously take away his right to contest its denial on appeal. Our supreme court long ago said courts have the duty to "scrupulously guard" the right to an impartial tribunal. Dickenson v. Parks, 140 So. 459, 462 (Fla. 1932). On this point, the court said, in magniloquent language, that the "outstanding big factor [1] in every lawsuit is the truth of the controversy," an admonition repeated in its judicial recusal cases. Id.; see MacKenzie v. Super Kids Bargain Store, Inc., 565 So. 2d 1332, 1342 (Fla. 1990); Livingston v. State, 441 So. 2d 1083, 1086 (Fla. 1983). Imputing waiver of the right to appeal without notice to the right-holder based on one-sided judicial postulation is contrary to the duty to "scrupulously guard" Jackson's right. And doing so when no party raised waiver as an issue in either the trial court or in this Court creates a new legal power for appellate courts to wield.[2]

---

[1] In all of American jurisprudence, the phrase "outstanding big factor" appears only in Dickenson and citations thereto; it has no clear meaning other than its ordinary sense, that being a "really big deal."

[2] The appellate power to raise and resolve a legal issue neither raised by any party nor brought to their attention, is said to come from Philip Morris USA, Inc. v. Brown, 96 So. 3d 468, 471

But can't a litigant waive the right to appeal a disqualification order? Of course, but that requires clear record evidence that the right-holder intentionally and knowingly did so, which isn't the case here. In finding waiver, the majority has created conflict and inconsistencies in the existing legal framework for review of disqualification orders, and stretched the meaning of inapt caselaw.

First of all, as noted in his motion, Jackson points out that three of the primary cases upon which the majority relies involved the untimely filing of disqualification motions *in the trial court.* But Jackson unquestionably filed his motion to recuse the trial judge timely, which contrasts with the three cases: <u>Fischer v. Knuck</u>, 497 So. 2d 240, 243 (Fla. 1986) (disqualification motion was untimely and "used to frustrate a final decision" because it "was filed eleven days after all the testimony had been taken and five days after the judge had announced his ruling"); <u>Lawson v. Longo</u>, 547 So. 2d 1279, 1281 (Fla. 3d DCA 1989) (disqualification motion was untimely because it was filed nine days after final judgment in bench trial; the movant "can be said to have sat on his rocking chair, watching the trial meander by. It is now too late and he has shown no good cause for delay"); and <u>Data Lease Fin. Corp. v. Blackhawk Heating & Plumbing Co., Inc.</u>, 325 So. 2d 475, 478 (Fla. 4th DCA 1975) (motion untimely under section 38.02, Florida Statutes, because it was "filed more than thirty days" after discovering grounds for disqualification). It cannot be said that Jackson dawdled at any stage by "sitting in a rocking chair, watching the trial meander by,"

---

(Fla. 1st DCA 2012), but that case merely states that the "standard of review for the legal sufficiency of a motion to disqualify is *de novo*," which says nothing about the overly broad scope of review created.

particularly since all his trial and appellate filings on disqualification were *pre-trial*, before a final hearing was held.

Next, and most importantly, appellate review of a denial of a disqualification order can be done either via a writ of prohibition *or* at the end of the case. People Against Tax Revenue Mismanagement, Inc. v. Reynolds, 571 So. 2d 493, 496 (Fla. 1st DCA 1990) (noting that movant may elect to challenge a disqualification ruling via a writ of prohibition or "raise the issue on plenary appeal"); D.H. ex rel. J.R. v. Dep't of Child. & Fams., 12 So. 3d 266, 272 (Fla. 1st DCA 2009) ("[A] petition for writ of prohibition is not the exclusive avenue for pursuing relief from the denial of a motion for disqualification."); see generally Philip J. Padovano, 5 Florida Practice, Civil Practice § 5:3 (2016-17 ed.) ("An order granting or denying a motion for disqualification can be reviewed on appeal from the final judgment. However, most such orders are reviewed before the trial or hearing on the merits by filing a petition for extraordinary relief.") (footnote omitted).[3]

Given these legal options, Jackson could have chosen to wait until the end of the case (which was not far off) to appeal the disqualification order. That he did not wait, and chose to exercise his right to seek appellate review earlier can't count against him, particularly

---

[3] The Appellate Rules Committee may wish to study whether to codify these two approaches, as a few other states have done. See Tenn. Sup. Ct. R. 10B (2016) (codifying the "two alternative methods of appeal—the accelerated interlocutory appeal or an appeal as of right following entry of the trial court's judgment—shall be the exclusive methods for seeking appellate review of any issue concerning the trial court's denial of a [disqualification] motion"); Tex. R. Civ. P. 18a (2011) (appellate review of orders on recusal motions may be reviewed "on appeal from the final judgment," "by mandamus" and "by appeal[] in accordance with other law").

when he filed his petition expeditiously. <u>People Against Tax Revenue Mismanagement</u>, 571 So. 2d at 496 (petitions for prohibition "should" be filed "as soon as practicable").

On this point, the majority overstates what was said in <u>People Against Tax Revenue Mismanagement</u>, asserting that "[w]e have stated the rule as requiring action 'as soon as practicable.'" No rule exists, let alone one that compels appellate filings within a matter of hours. Dicta in that case said the appellate petition "should have been filed as soon as practicable." Exhortations to act speedily are commendable, but "should" is not compulsion and "practicable" means only what can reasonably be done. Indeed, in that same case the Court said "there is no legal barrier to the filing of a petition for writ of prohibition less than an hour before this court closes for business on a Friday when petitioner seeks to prevent a trial scheduled to begin on Monday morning." <u>Id.</u> at 496. Read in context, the Court in <u>People Against Tax Revenue Mismanagement</u> was pointing out a lack of diligence by the petitioner in that case; yet, even so, it nonetheless considered and resolved the merits of the prohibition petition, one that subsumed multiple disqualification motions filed over the course of a year-long proceeding. <u>See</u> <u>id.</u> What happened in <u>People Against Tax Revenue Mismanagement</u> is incomparable to this case. How appellate review can be denied here, when it was allowed in <u>People Against Tax Revenue Mismanagement</u>, can't be reconciled.

Under the exigent circumstances of this fast-moving election challenge, Jackson was not required to file a petition for writ of prohibition; and it would have been wholly "reasonable" for him to not delay the proceeding by seeking review on plenary appeal after trial. In <u>D.H. ex rel. J.R.</u>, this Court held it was "reasonable" to proceed with an imminent

hearing rather than delay it by seeking a writ of prohibition. 12 So. 3d at 272. In that case, the trial court denied a disqualification order "just minutes before [a] termination hearing was scheduled to begin," this Court saying on appeal that the appellant's "decision to proceed with the termination hearing rather than delay the proceedings further by seeking a writ of prohibition, is reasonable under the particular circumstances." Id. That Jackson filed a petition expeditiously—on a Sunday less than 48 hours after attending a compulsory court-ordered hearing—provides no "procedural bar" to this Court's consideration of the matter.

Notably, two new legal requirements in disqualification cases emerge. The first is that once a litigant gets an adverse ruling on a disqualification motion, he must continually object to a trial judge presiding over his case; failure to do so supports waiver of the right to appeal. But Jackson could have waited until the end of the case to raise the disqualification issue, so why is a continuing objection required? What purpose does it serve? Jackson had already timely filed his disqualification motion, thereby perfecting his right to challenge the trial judge's ruling on appeal as to those grounds raised. The only thing Jackson was legally required to do in the trial court was to assert timely any *newly-discovered* grounds for recusal, beyond those he previously asserted, if he wished to preserve the new ones. No statute, case, or rule required him to continually object as to the initial grounds for recusal that the trial court ruled were legally insufficient. And Jackson clearly indicated an intent to seek legal review of the disqualification order; why else would he have said in filing his legal papers before the court-ordered hearing: "*For the benefit of the appellate record,* Jackson requests that this Court state the basis on which it denied his motion for disqualification."

6

For similar reasons, a second new legal requirement—that Jackson was supposed to have sought a stay or continuance—makes little sense. Since he can wait until the end of the case to seek appellate review, what compels him to seek a stay or continuance? And why would the failure to do so amount to waiver, particularly when he could have dismissed his prohibition petition and sought plenary review and raised the disqualification issue?

Notably, no caselaw or rule exists for either of the two new legal requirements imposed on Jackson in this case (and, prospectively, on trial and appellate lawyers who will now struggle to understand what is required of them). Moreover, both of these newfound obligations are merely "secondary factors" that stand in the way of arriving "at the truth of the controversy." Dickenson, 140 So. at 462.

Finally, the shelf-life of the majority's opinion on waiver was fleeting, becoming moot within hours due to the trial judge's spontaneous decision to recuse himself soon after his receipt of the majority's ruling. A court has the inherent power and discretion to vacate its opinions, moot or otherwise, prior to the mandate issuing and the case becoming final, a power that should have been exercised here. Rothenberg v. Conn. Mut. Life Ins. Co., 161 So. 2d 875, 877 (Fla. 3d DCA 1964) (vacating its opinion based on mootness due to settlement of parties); see generally Fla. R. App. P. 9.340 (2017); Philip J. Padovano, Florida Appellate Practice at § 20:8 ("An appellate decision ordinarily becomes final when the appellate court issues a document known as a mandate."). After the trial judge recused himself, the majority opinion thereafter could have no actual effect whatsoever on the issue of whether the trial judge should have recused himself earlier. Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992)

("An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect."). No claim is made that an exception to the mootness doctrine applies (such as a question of great public importance or one that evades review) that would justify not vacating our opinions. Phibro Res. Corp. v. State, Dep't of Envtl. Reg., 579 So. 2d 118, 125-26 (Fla. 1st DCA 1991) (retaining jurisdiction and declining motions for rehearing to vacate opinions as moot due to importance of issues raised and the likelihood of recurrence). For reasons of judicial restraint, we should have vacated the moot portions of our respective majority and dissenting opinions, as internally requested, and moved on.

In response to this dissent, the majority issued an order asking Jackson whether his rehearing motion should be denied as moot, to which he agreed in a one-sentence response shortly thereafter; he was not asked whether we should vacate our opinions. That Jackson's rehearing motion is moot supports vacating our opinions, because "[i]t is the function of a judicial tribunal to decide actual controversies *by a judgment which can be carried into effect*, and *not to give opinions on moot questions*, or *to declare principles or rules of law which cannot affect the matter in issue*." Montgomery v. Dep't of HRS, 468 So. 2d 1014, 1016-17 (Fla. 1st DCA 1985) (emphasis added). Here, the majority opinion can't be carried into effect, opines on moot questions, and declares new legal rules and principles that matter not in this concluded case (but create confusion for future litigants). As such, we should undo our moot handiwork; vacatur is appropriate and prudent.

**I HEREBY CERTIFY** that the foregoing is (a true copy of) the original court order.

Served:

| | | |
|---|---|---|
| Stephen M. Slepin | Dan R. Stengle | Louis C. Norvell |
| Charles B. Upton | Hon. Karen A. Gievers, Judge | Gwen Marshall |

am

_____
JON S. WHEELER, CLERK