SCHWARTZ, Senior Judge.
 

 The Florida Department of Children and Families seeks review of an order directing it to provide a Chapter 39 case plan and services for the mother Y.C. and her three children.
 
 [1]
 
 Unhappy with her situation, that of her children, and the fact that after investigation, DCF had previously determined her complaints did not warrant Department intervention, Y.C. filed a ‘private’ dependency petition ‘against’ herself and O.D., the children’s father, in which she alleged that she and her children were at risk of harm based on O.D.’s various acts of violence.
 
 [2]
 
 ,
 
 [3]
 
 Notwithstanding the DCF’s decision, the GAL Program moved to have the trial court
 
 *1141
 
 order the Department to file a case plan and provide services. DCF filed a limited appearance to object to that motion. A few days later, the GAL Program joined in Y.C.’s dependency petition. A month after that, with no trial conducted and no evidence presented, the court entered an order of dependency.
 
 The sole basis then or ever asserted for the order was the fact that Y.C. had defaulted and thus ‘admitted’ her oum allegations of
 
 dependency,
 
 [4]
 
 DCF maintains that the order which followed, requiring the agency to provide a case plan and services,
 
 [5]
 
 departed from the essential requirements of the law. We agree for several reasons, most significantly because the order was premised on a fundamentally invalid determination of dependency.
 
 [6]
 

 First, we see no acceptable way for one to file a petition, acquiesce to the allegations of that petition, and thereby secure judicial relief. This is not a case or controversy and not, therefore, a basis for court action.
 
 [7]
 
 The respondents base their position on the statutory language providing that “any ... person with knowledge
 
 *1142
 
 of the facts alleged,” not excluding a parent, may
 
 file
 
 a petition for dependency.
 
 See
 
 § 39.501(1), Fla. Stat. (2010). Reliance on that language to support the order below, however, just makes no sense. See
 
 Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc.,
 
 3 So.3d 1220, 1235 (Fla.2009) (“We are not required to abandon either our common sense or principles of logic in statutory interpretation.”). A scenario in which the same person asks the court to act and then admits the need for that action, without more, simply does not legally confer authority upon it to do so. Rather than presenting a legally cognizable proceeding, it involves merely an unopposed request for the assistance of the court in a similar request to the responsible agency. When as here, the agency has already declined that request, it is wholly improper for the court to intervene.
 
 [8]
 

 More to the point, a valid dependency determination rests on a finding by the
 
 *1143
 
 court of one or more of the conditions enumerated in section 39.01(15), Florida Statutes (2010).
 
 [9]
 
 We reject the premise that the statutory obligation of a court to find that a child is dependent and make findings supporting that conclusion may be satisfied based on no more than a parent’s “agreement” with herself.
 
 [10]
 
 When the court makes a determination of dependency premised only on such a ‘default,’ this requirement is not met.
 

 The Florida Rules of Juvenile Procedure addressing dependency proceedings provides two routes by which a determination of dependency may be accomplished — either by admission, see Fla. R. Juv. P; 8.325,
 
 [11]
 
 or by adjudicatory hearing. See Fla. R. Juv. P. 8.330.
 
 [12]
 
 Each ‘route’ how
 
 *1144
 
 ever requires the trial judge to list the factual determinations relied on. See Fla. R. Juv. P. 8.332.
 
 [13]
 
 Even in the case of an ‘admission’ — which as we read that provision clearly envisions adverse parties coming to an agreement-the court’s order must include “findings of fact specifying the act or acts causing dependency, by whom committed, and facts on which the findings are based.” See Fla. R. Juv. P. 8.325. With no evidence taken and no countervailing position advanced, there was no opportunity for the trial judge to make the crucial findings necessary to a valid dependency determination.
 
 [14]
 
 ,
 
 [15]
 
 ’
 
 [16]
 
 Without a valid depen
 
 *1145
 
 dency determination, the trial court acted in excess of its jurisdiction in directing DCF to provide the services ordered.
 
 [17]
 
 ,
 
 [18]
 

 Certiorari granted.
 

 [1]
 

 . These children are O.D., Jr., born December 26, 1997; L.D., born August 25, 2000; and A.D., born May 11, 2003.
 

 [2]
 

 . The petition recounted, among many other things, that Y.C. had sought and was granted a temporary domestic violence injunction, September 25, 2010. However in response to the investigation prompted by that action, Y.C. denied to a CPI that the children had witnessed any of the physical abuse being
 
 *1141
 
 investigated and said she did not believe O.D. had placed the children at harm. The CPI report also reflects that Y.C. and the children had moved to an undisclosed location. On November 2, 2010, therefore, the very, next day after Y.C. filed her petition, DCF closed its investigation, finding that the allegations of abuse had not been substantiated. The allegations of an earlier report of domestic violence had likewise been discounted by Y.C. herself to an investigating CPI.
 

 [3]
 

 . The agency’s conclusion was based on findings that (1) Y.C. had informed the CPI that the children did not witness any of the physical abuse alleged; (2) none of the children disclosed domestic violence between their respective mothers and O.D.; (3) Y.C. informed the CPI that she did not believe O.D. had placed the children in harm; and (4) Y.C. and her three children had relocated away from O.D.
 

 [4]
 

 . The co-respondent father denied the allegations. That issue remains unresolved.
 

 [5]
 

 . It is difficult to understand what those services may have been or what the case plan might have provided as the children were now living with the mother, and the father, the only alleged culprit, now has nothing to do with them.
 

 [6]
 

 . We also agree that certiorari review is the appropriate vehicle for review.
 
 See Dep’t of Corrs. v. Harrison,
 
 896 So.2d 868, 869 (Fla. 5th DCA 2005) ("[T]he Department of Children and Families has successfully sought certiorari review in cases where a trial court allegedly exceeded its judicial authority by encroaching on the powers of the executive branch by ordering it to take some action not permitted under the law.”); see also
 
 Belair v. Drew, 770
 
 So.2d 1164, 1166 (Fla.2000).
 

 [7]
 

 .Lord v. Veazie,
 
 49 U.S. (8 How.) 251, 255, 12 L.Ed. 1067 (1850), provides:
 

 [A]ny attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always repre-hened, and treated as a punishable contempt of court.
 

 Likewise, in
 
 Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth,
 
 300 U.S. 227, 240-41, 57 S.Ct. 461, 81 L.Ed. 617 (1937), the Court said:
 

 The Constitution (article 3, s2) limits the exercise of the judicial power to ‘cases’ and ‘controversies.’
 

 [[Image here]]
 

 A 'controversy' in this sense must be one that is appropriate for judicial determination.
 
 Osborn v. Bank of United States, 9
 
 Wheat. 738, 819, 6 L.Ed. 204.... The controversy must be definite and concrete, touching the legal relations of parties having
 
 adverse legal interests,
 
 [e.s.].
 

 See Bryant v. Gray,
 
 70 So.2d 581, 584 (Fla.1954) ("[Tjhere must be a bona fide dispute between the contending parties as to a present justiciable question.’’);
 
 A.G. v. Dep’t of Children & Family Servs.,
 
 932 So.2d 311, 313 (Fla. 2d DCA 2006) ("It is the function of a judicial tribunal to decide actual controversies” (quoting
 
 Montgomery v. Dep’t of Health
 
 
 *1142
 

 & Rehabilitative Servs.,
 
 468 So.2d 1014, 1016-17 (Fla. 1st DCA 1985)));
 
 Ferreiro v. Phila. Indem. Ins. Co.,
 
 928 So.2d 374, 377 (Fla. 3d DCA 2006) ("To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant, and that such case or controversy continues from the commencement through the existence of the litigation.”);
 
 Collins v. Gov’t Emp. Ins. Co.,
 
 922 So.2d 353, 353 (Fla. 3d DCA 2006) ("To have standing the plaintiff must show that a case or controversy exists between that plaintiff and the defendant.”).
 

 [8]
 

 . If, as here, the court on its own motion agrees to require executive action which is otherwise within the executive agency's own discretion, the doctrine requiring separation of powers is directly invoked and violated. As we stated in
 
 Office of State Attorney for Eleventh Judicial Circuit v. Polites,
 
 904 So.2d 527, 532 (Fla. 3d DCA 2005):
 

 Article II, section 3, of the Florida Constitution provides that:
 

 The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
 

 "Under the separation of powers doctrine 'no branch may encroach upon the powers of another.’ See
 
 Chiles v. Children A, B, C, D, E, and F,
 
 589 So.2d 260, 264 (Fla.1991). When a court interferes with an executive agency’s discretion in spending its appropriate funds, it is encroaching on the powers of the agency.
 
 See, e.g., Dep’t of Corr. v. Grubbs,
 
 884 So.2d 1147, 1148 (Fla. 2d DCA 2004). Judges may not direct an executive agency to spend its money in a particular way.
 
 See Brown v. Feaver, 726
 
 So.2d 322, 325 (Fla. 3d DCA 1999).” Office of State Attorney for
 
 Eleventh Judicial Circuit v. Polites
 
 904 So.2d 527, 532 (Fla. 3d DCA 2005). See also
 
 Fla. Dep’t of State, Div. of Elections v. Martin,
 
 916 So.2d 763, 769 (Fla.2005) (”[N]o branch may encroach upon the powers of another.”);
 
 State v. Cotton,
 
 769 So.2d 345, 353 (Fla.2000) (observing that our courts have “traditionally applied a strict separation of powers doctrine”); Merkle
 
 v. Guardianship of Jacoby,
 
 912 So.2d 595, 600 (Fla. 2d DCA 2005) (”[T]he limitation on the exercise of judicial power to the decision of justiciable controversies has been attributed to judicial adherence to the doctrine of separation of powers.
 
 Ervin v. City of N. Miami Beach,
 
 66 So.2d 235, 236 (Fla.1953) (quoting Anderson on Declaratory Judgments, vol. 1, 2d ed., 66)”); see generally
 
 Agency for Persons with Disabilities v. J.M.,
 
 924 So.2d 1, 2 (Fla. 3d DCA 2005) ("A trial court may not interfere with and does not have the authority to enter into the decision-making process which is delegated to a state agency!.]”);
 
 Dep’t of Children & Family Servs. v. M.H.,
 
 830 So.2d 849, 850 (Fla. 2d DCA 2002) (”[T]he circuit court lacks jurisdiction to direct a specific placement and treatment of an individual committed to the department!;.]”);
 
 State v. D.D.B.,
 
 737 So.2d 1178 (Fla. 2d DCA 1999) (concluding that trial judge did not have discretion to dismiss criminal mischief charge against juvenile on court's own motion, and doing so encroached upon prosecutor's authority);
 
 Simms v. State, Dep’t of Health & Rehab. Servs.,
 
 641 So.2d 957, 960 (Fla. 3d DCA 1994) (The separation of powers clause prohibits unlawful encroachment by one branch upon powers of another branch.);
 
 State v. P.S.,
 
 587 So.2d 672, 672 (Fla. 5th DCA 1991) ("In dismissing the petition upon its own motion, the trial court encroached upon the prosecutorial authority of the state attorney.”);
 
 Dep't of Health &
 
 
 *1143
 

 Rehab. Servs. v. Brooke,
 
 573 So.2d 363, 370 (Fla. 1st DCA 1991) (observing that the legislature’s appropriations power was "off limits to the courts” and "had the [court’s] orders ... required the Department to make placements that would exceed the amounts set forth in the annual appropriations act by the legislature, or ... encroached upon the legislature’s power of appropriation, they would have been rendered in excess of the judges' jurisdiction”);
 
 State, ex ret Dep’t of Health & Rehabilitative Servs. v. Nourse,
 
 437 So.2d 221, 222 (Fla. 4th DCA 1983) (”[T]he court does not have jurisdiction to manage the details of how the Department of Health and Rehabilitative Services will attempt to rehabilitate juveniles.”);
 
 Dep’t of Children & Family Servs. v. I.C,
 
 742 So.2d 401, 404 (Fla. 4th DCA 1999) (”[T]he court has no general jurisdiction over DCF to monitor and evaluate its functioning.”).
 

 [9]
 

 .Section 39.01(15), Florida Statutes provides;
 

 (15) "Child who is found to be dependent” means a child who, pursuant to this chapter, is found by the court:
 

 (a) To have been abandoned, abused, or neglected by the child’s parent or parents or legal custodians;
 

 (b) To have been surrendered to the department, the former Department of Health and Rehabilitative Services, or a licensed child-placing agency for purpose of adoption;
 

 (c) To have been voluntarily placed with a licensed child-caring agency, a licensed child-placing agency, an adult relative, the department, or the former Department of Health and Rehabilitative Services, after which placement, under the requirements of this chapter, a case plan has expired and the parent or parents or legal custodians have failed to substantially comply with the requirements of the plan;
 

 (d) To have been voluntarily placed with a licensed child-placing agency for the purposes of subsequent adoption, and a parent or parents have signed a consent pursuant to the Florida Rules of Juvenile Procedure;
 

 (e) To have no parent or legal custodians capable of providing supervision and care; or
 

 (f) To be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.
 

 [10]
 

 . See Fla. R. Juv. P. 8.400(d)(1) ("The department shall prepare a draft of a case plan for each child receiving services under Chapter 39, Florida Statutes.”).
 

 [11]
 

 . Rule 8.325(c), addressing answers and pleadings, specifically provides:
 

 Admission of or Consent to Dependency. The parent or legal custodian may admit or consent to a finding of dependency. The court shall determine that any admission or consent to a finding of dependency is made voluntarily and with a full understanding of the nature of the allegations and the possible consequences of the admission or consent, and that the parent has been advised of the right to be represented by counsel. The court shall incorporate these findings into its order in addition to findings of fact specifying the act or acts causing dependency, by whom committed, and facts on which the findings are based. If the answer admits the allegations of the petition it shall constitute consent to a predisposition study.
 

 [12]
 

 . Rule 8.330(a), addresses adjudicatory hearings, and provides:
 

 Hearing by Judge. The adjudicatory hearing shall be conducted by the judge, without a jury, utilizing the rules of evidence in use in civil cases. At this hearing the court shall determine whether the allegations of the dependency petition have been sustained by a preponderance of the evidence. If the court is of the opinion that the allega
 
 *1144
 
 tions are sustained by clear and convincing evidence, it may enter an order so stating.
 

 [13]
 

 . Rule 8.332(a), addressing orders finding dependency provides:
 

 Finding of Dependency. In all cases in which dependency is established, the court shall enter a written order stating the legal basis for a finding of dependency, specifying the facts upon which the finding of dependency is based, and stating whether the court made the finding by a preponderance of the evidence or by clear and convincing evidence. The court shall include the dates of the adjudicatory hearing, if any, in the order.
 

 [14]
 

 . While we need not address the reasons for the dependency determination, the only two conceivable subsections which might support a determination of dependency, sections 39.01(15)(a), or (f), indisputably do not apply. Y.C. conceded that the children had not been "abandoned, abused, or neglected,” § 39.01(15)(a), and it is clear that Y.C. and her three children have now moved away from O.D. Thus, there is no factual basis for concluding the children "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians” as required by section 39.01(15)(f).
 
 See L.A.G. v. Dep’t of Children & Family Servs.,
 
 963 So.2d 725, 727 (Fla. 3d DCA 2007) ("For a dependency adjudication to be affirmed, there must be competent substantial record evidence that the child was either (1) abused, abandoned, or neglected by the parents, or (2) at imminent risk of being abused, abandoned or neglected by the parents.”);
 
 In re K.V.,
 
 939 So.2d 200, 202 (Fla. 2d DCA 2006) ("[I]n order to declare a child dependent, the parent's harmful behavior must pose a present threat to the child based on current circumstances.”) (quoting
 
 M.B. v. Dep’t of Children & Family Servs. (In re K.B.),
 
 937 So.2d 709, 711 (Fla. 2d DCA 2006)));
 
 J.C. v. Fla. Dep't of Children & Family Servs.,
 
 937 So.2d 184, 186 (Fla. 3d DCA 2006) ("The allegations contained in the dependency petition must be established by a preponderance of the evidence.”).
 

 [15]
 

 .
 
 See State Farm Mut. Auto. Ins. Co. v. Kendrick,
 
 780 So.2d 231, 233 (Fla. 3d DCA 2001) ("A trial court cannot delegate the sole authority to perform 'a purely judicial function.' ” (quoting
 
 Larson v. State,
 
 572 So.2d 1368, 1371 (Fla.1991))).
 
 See also Lackner v. Central Fla. Inv., Inc.,
 
 14 So.3d 1050, 1053 (Fla. 5th DCA 2009) ("Judicial powers vested in the courts by constitution or statute are nondelegable.”);
 
 Toiberman v. Tisera,
 
 998 So.2d 4, 8 (Fla. 3d DCA 2008) ("[N]o court in this state can delegate its judicial authority to any person serving the court in a non-judicial function.” (citations omitted));
 
 Jones v. State,
 
 749 So.2d 561 (Fla. 2d DCA 2000) (concluding judge could not delegate to the clerk its discretionary authority as provided by statute, to excuse jurors).
 

 [16]
 

 . Not only were the 'findings’ in this case based on no more than the mother’s 'default' but they lacked the imperative specificity; the dependency determination stated only;
 

 Findings as to Mother: Exposure to Domestic Violence; Failure to Protect children from domestic violence.
 

 The order failed to set forth any factual findings as to exposure to domestic violence or failure to protect the children, repeating the error observed in
 
 J.C.G. v. Department of Children & Families,
 
 780 So.2d 965, 966 (Fla. 5th DCA 2001). In that case, the Fifth District vacated an order of dependency and remanded the case because the lower court’s "written order statfed] that the father had ‘abandoned the children,’ ” however as Fifth District observed, "[ujnfortunately, the order failed to set forth any factual findings as to abandonment.”). See
 
 M.E.G. v. Dep’t of Children & Families,
 
 754 So.2d 879, 880-81 (Fla. 5th DCA 2000) ("An order adjudicating a child dependent must contain specific facts supporting the adjudication.”);
 
 McKenzie v. Dep't
 
 
 *1145
 

 of Health & Rehab. Servs.,
 
 663 So.2d 682, 684 (Fla. 5th DCA 1995) ("Florida Rule of Juvenile Procedure 8.325(c) requires that an order adjudicating dependency incorporate 'findings of fact specifying the act or acts causing dependency, by whom committed, and facts upon which the findings are based.' See
 
 In re S.H.,
 
 642 So.2d 809, 810 (Fla. 2d DCA 1994) (refusing to conclude that parent’s oral consent to petition permitted entry of order of disposition without findings to support adjudication)”); In the
 
 Interest of C.S.,
 
 503 So.2d 417 (Fla. 1st DCA 1987) (despite deficiency of order adjudicating child dependent due to lack of factual findings, order reversed where petition and evidence failed to present adequate support for finding of dependency based upon neglect); In the
 
 Interest of D.S.,
 
 492 So.2d 797, 799 (Fla. 2d DCA 1986) ("[Ojrders of adjudication of dependency must contain a statement of the facts upon which they are based.”)
 

 [17]
 

 . We are bound to say that neither the trial court nor the GAL should have allowed itself to become involved in the combination charade-theatre of the absurd, which played itself out below.
 

 [18]
 

 . Still another basis for our conclusion that the order to provide services was improperly entered on the 'default' is that the adjudication was contrary to the court’s obligation to hold an adjudicatory hearing after the father’s objection. As this court explained in
 
 Monteiro v. State,
 
 477 So.2d 45, 45-6 (Fla. 3d DCA 1985):
 

 The consent to dependency of a child by one parent does not affect the right of the other parent to continue in his or her parental role.
 
 Where one of the parents continues to deny the allegations in the dependency petition, an adjudicatory hearing must be held.
 
 § 39.408, Fla.Stat. (Supp.1984).
 

 See Fla. R. Juv. P. 8.315 ("If an admission or consent is entered and no denial is entered by any other parent or legal custodian, the court shall schedule a disposition hearing to be conducted within 15 days. If a denial is entered, the court shall set an adjudicatory hearing within the period of time provided by law and appoint counsel when required.”); Florida Bar, Florida Juvenile Law and Practice § 13.1 (2011) (citing
 
 Monteiro
 
 and observing "The consent of one parent to the adjudication of dependency is sufficient only if the petition alleges that only the consenting parent committed acts or omissions that led to the child’s dependency.
 
 If both parents are named in the petition, the consent of one parent to the adjudication of dependency is insufficient to establish the dependency, because this violates the due process rights of the non-consenting parent.”
 
 [e.s.] )
 

 In the instant case, the transcript of the June 13, 2011 hearing on the matter confirms the father’s denial of the dependency allegations.
 

 MR. HERSHOFF [on behalf of father]: Yes, Judge. We filed a motion to dismiss today based on the fact that we don't believe the allegations that are in the petition are sufficient with whatever has been before you to be able to go forward. Mr. Deleon, as you know, has not entered a plea yet and will be entering a plea of denial in dependency.
 

 The attorney appearing on behalf of the DCF reiterated the problem with adjudicating the children dependent in the face of the father’s objection:
 

 MR. GARDNER: I cited case law. In any event, Judge, this matter was investigated by investigators from DCF and they found no facts warranting filing a petition. Thereafter, as you know, the mother filed a private petition. She named herself as the petitioner and the respondent. And she pled the petition, thereby invoking this court’s jurisdiction. We believe that’s improper and it prejudices the father’s constitutional rights to raise his children.
 

 [[Image here]]
 

 MR. GARDNER: At this juncture nothing has [] been proven against the dad. So all we have is the bare-bones allegations-of mom against herself. That’s all we have. To adjudicate a child under that circumstance is unusual to say the least. Again, it infringes on the dad’s rights.