# Third District Court of Appeal

## State of Florida

Opinion filed July 15, 2015.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2409
Lower Tribunal No. D14-15895

_____

**In the Interest of:**
**B.Y.G.M., etc., A minor child**,
Appellant.


An Appeal from the Circuit Court for Miami-Dade County, Maria I. Sampedro-Iglesia, Judge.

Shook, Hardy & Bacon L.L.P., Daniel B. Rogers, Harold A. Arteaga and Iain L. C. Kennedy; Mary M. Gundrum, Immigrant Children's Justice Clinic, FIU College of Law; Kristie-Anne Padron, Catholic Charities Legal Services, for appellant.

Bernard P. Perlmutter for Americans for Immigrant Justice, Florida's Children First, University of Miami School of Law Children & Youth Law Clinic and Immigration Clinic, as amicus curiae.


Before SHEPHERD, FERNANDEZ and LOGUE, JJ.

FERNANDEZ, J.

B.Y.G.M appeals the trial court's denial of her private petition for dependency in which she sought an adjudication of dependency based on

abandonment and neglect by her father. We affirm because the evidence is insufficient to support a finding of abandonment or neglect.

B.Y.G.M. is a native of El Salvador who was seventeen years old when she filed her petition. B.Y.G.M.'s father abandoned her when she was eight months old. He never visited or contacted her. He never provided financial or emotional support.

B.Y.G.M.'s mother left for the United States when B.Y.G.M. was three years old. B.Y.G.M. lived with her grandparents in El Salvador. She has a close relationship with them, but they were not able to protect her against alleged life threats and harassment from local gang members. In 2014, B.Y.G.M. fled to the United States where she lives with her mother.

The trial court heard B.Y.G.M.'s petition for dependency based on abandonment and neglect by her father. B.Y.G.M. argued that she qualified for Special Immigrant Juvenile Status or "SIJS." See 8 U.S.C. § 1101 (a)(27)(J)(i). SIJS is a visa that enables a child to apply for lawful permanent residency (a green card) after which the child can seek citizenship. To be eligible for SJIS, a court must declare an alien minor dependent. Id. The court must also find that it would not be in the alien child's best interest to be returned to their country of origin. Id. This finding is contained in what is commonly referred to as a "best interest order."

2

B.Y.G.M. also argued that, if she is returned to El Salvador, she will have no one there to care for her or protect her.

The trial court denied the petition, holding that B.Y.G.M. was not dependent, pursuant to section 39.01(15)(e), Florida Statutes (2013). The court found that B.Y.G.M. has a parent, her mother, who is capable of providing B.Y.G.M. with supervision and care.

B.Y.G.M. moved for reconsideration. On rehearing, the department challenged the petition.[1] The court heard testimony from B.Y.G.M. and her mother. B.Y.G.M.

---

[1] The department appeared for the first time on rehearing. But the department's appearance at this stage is certainly not a happenstance occurrence, or even an impermissible one. Chapter 39 is silent as to whether the department is an automatic party to all dependency proceedings. See Chapter 39, Florida Statutes (2013). There is no Florida court that has so held, either.

The department, as most frequently occurs, is absent in proceedings that involve private petitions. See, e.g., In re Y.V., 160 So. 3d 576, 577-81 (Fla. 1st DCA 2015)(stating that Y.V. did not request any services from the state; reversing the dismissal of a private petition and remanding for an adjudicatory hearing because prima facie case of dependency was established); In re A.R., 143 So. 3d 449, 449-50 (Fla. 2d DCA 2014)(involving the mother's private petition for involuntary termination of an incarcerated father's parental rights; reversing and remanding for full evidentiary hearing); Fla. Dep't of Children & Families v. Y.C., 82 So. 3d 1139 (Fla. 3d DCA 2012)(stating that the department filed a limited appearance in response to a request that the trial court order the department to file a case plan and provide services, following the department's determination that it did not have to intervene in the mother's petition filed against herself; granting certiorari relief in department's favor); In re T.J., 59 So. 3d 1187, 1188 n.1 (Fla. 3d DCA 2011)(noting that the department did not brief or argue either side of the issue below or on appeal; reversing the summary denial of an amended private petition and remanding for further proceedings).

At no time did B.Y.G.M. request any services from the State.

maintained that she had proven the grounds necessary for an adjudication of dependency based on abandonment and neglect. She argued that there is no remoteness limitation on a petition for dependency based on abandonment because parents have an ongoing duty to care for their children. She further argued that Florida law allows for a finding of dependency based on the abandonment of one parent.

The department argued that, while the father had a duty to support B.Y.G.M., the purpose of chapter 39 was not the enforcement of child support but to ensure the secure and safe custody of a child.[2] The court denied the motion.

The department takes no position in this appeal. B.Y.G.M. has attained the age of majority, and the department is no longer required to supervise her placement.

A de novo standard governs this Court's review of the trial court's denial of B.Y.G.M.'s petition. See C.R. v. Dep't of Children & Family Servs., 53 So. 3d 240,

---

[2] Chapter 39, Florida Statutes (2013), states that its purpose is:

> To provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; to promote the health and well-being of all children under the state's care; and to prevent the occurrence of child abuse, neglect, and abandonment.

See § 39.001(1)(a), Fla. Stat. (2013).

4

242 (Fla. 3d DCA 2010); G.C. & D.C. v. Dep't of Children & Family Servs., 791 So. 2d 17, 19 (Fla. 5th DCA 2001).

We agree with the trial court's determination that there is no support for an adjudication of dependency. The father's abandonment was, as the court correctly found, too remote to serve as a basis for dependency and did not cause B.Y.G.M. any harm. See, e.g., In re K.V., 939 So. 2d 200, 202 (Fla. 2d DCA 2006) (concluding that instances of domestic violence in the presence of the child were too remote in time to support an adjudication of dependency); B.C. v. Dep't of Children and Families, 846 So. 2d 1273, 1274 (Fla. 4th DCA 2003) (stating that "[i]n order to support an adjudication of dependency, the parents' harmful behavior must be a present threat to the child").[3]

Furthermore, chapter 39 defines a dependent child as a child who, consistent with the trial court's findings, has "been abandoned, abused, or neglected by the child's parent or parents or legal custodians", or a child who is "at substantial risk of imminent abuse, abandonment or neglect by the parent or parents or legal custodians." § 39.01(15)(a),(f), Fla. Stat. (2013). There is no evidence that B.Y.G.M. is at substantial risk of imminent abuse, abandonment or neglect. She is secure and safe in the custody of her mother who provides supervision and care.

---

[3] The court also rejected the argument that dependency can turn on the actions of a single parent. However, section 39.01 allows a court to find dependency as to one parent. See § 39.01(15), Fla. Stat. (2013).

5

This is unlike the case, for example, of In re Y.V., 160 So. 3d 576 (Fla. 1st DCA 2015). In that case, the petitioner lived with his uncle, his non-legal custodian. Id. at 577. The trial court dismissed the petition because the events that gave rise to the dependency grounds occurred outside the State of Florida, and the court found that the petition was an attempt to circumvent federal immigration laws. Id. at 577-80. The district court reversed and remanded for further proceedings, concluding that the petition established a prima facie case of dependency. Id. at 581. B.Y.G.M., however, lives with her mother who is her legal custodian. Additionally, the trial court conducted an adjudicatory hearing prior to the denial of B.Y.G.M.'s petition.

We recognize that the trial court's denial of B.Y.G.M.'s petition simultaneously denies B.Y.G.M. the ability to seek federal relief in the form of SJIS. It is understood that B.Y.G.M. filed her petition to secure SJIS, and that she did not do so in order to obtain relief from abuse, abandonment, or neglect. There is, however, simply no basis for a declaration of dependency under these circumstances where there is neither substantial risk of imminent abuse, abandonment or neglect, nor the absence of a parent or legal custodian incapable of providing supervision and care.

For the foregoing reasons, we affirm the trial court's denial of B.Y.G.M.'s private petition for dependency.

Affirmed.

SHEPHERD, J., concurring

I concur in the opinion of the majority in this case.  I write only to point out the troubling fact that the Florida Department of Children and Families (DCF) has elected not to participate in these proceedings.  DCF has admitted both in the trial court and here that it is a party.  DCF trial counsel told the court below: "The Department of Children and Families, **as the statute indicates**, is an automatic party to all Dependency proceedings."  On appeal to this court, appellate counsel for DCF identified the statute: "The Department's position was based on **the legislative requirement, pursuant to §39.521(b)1**(sic)**, Fla. Stat. (2014), to provide protective supervision over the minor's placement** upon an adjudication of dependency."[4] (Emphasis added).  Before us now, DCF's appellate

[4] The majority paints an image of the court and DCF closing their files in these cases after the dependency adjudication.  That, of course, is not true. It is not the action of B.Y.G.M. that defines the court's and DCF's obligations and continuing responsibility for the well-being of a child declared dependent on the court under Chapter 39 of the Florida Statutes.  It is Florida law.  Section 39.521(1)(b)(3) of the Florida Statutes requires placement of all children adjudicated dependent by a court "under the protective supervision of an authorized agent of the department . . . until the court terminates it or until the child reaches the age of 18."  This section

7

counsel waxes apologetic about its participation below, explaining that it participated there only grudgingly "at the request of the lower court."

In these cases, the express purpose of the petition is to obtain an adjudication of dependency, based on abuse, abandonment, or neglect, as a predicate to requesting special immigrant status for the purpose of seeking lawful permanent residence in the United States. See 8 U.S.C. § 1101(a)(27)(J) (2013). These private petitions, specifically those that do not seek any state services, are almost always uncontested. See In the Interest of M.A.S-Q & Y.E.S-Q, 22 Fla. L. Weekly Supp. 213a (11th Cir. Ct. Oct. 22, 2013) (Judge Hanzman observing with palpable discomfort, "DCF never challenges these cases."). On those rare occasions where it has taken a position, DCF has opposed the petition. See, e.g. L.T. v. Dep't of Children & Families, 48 So. 3d 928 (5th DCA 2010); see also F.L.M. v. Dep't of Children & Families, 912 So. 2d 1264, 1269 (Fla. 4th DCA 2005) ("[S]uch is not a proper use of Florida's laws, courts and resources devoted to helping truly-dependent, truly needy children"). DCF may find it uncomfortable to oppose a petition for dependency that will help a child obtain legal immigration status. It may consider these cases to be too sensitive for its taste.[5] However, as the agency

---

of the Florida Statutes details the requirements of that supervision, beginning with judicial reviews at least every six months. See §39.521(c), Fla. Stat. (2014). However safe a child may appear to be upon an adjudication, the courts and DCF have become sadly aware of what can happen when they turn their backs.

[5] This would not be the first time DCF has shied away from sensitive matters. See, e.g., R.C. v. Dep't of Children & Family Servs., 150 So. 3d 1277 n.1 (Fla. 3d DCA

charged with protecting children and families, DCF should have a keen interest in the outcome of this case and how we interpret the applicable law.

DCF is the agency responsible for the administration of Chapter 39 of the Florida Statutes. See § 20.19, Fla. Stat. (2013) ("There is created a Department of Children and Families . . . [with the] mission of work[ing] in partnership with local communities to protect the vulnerable, promote strong and economically self-sufficient families, and advance personal and family recovery and resiliency."); Graham v. State, 40 Fla. L. Weekly D633, D636 n.3 (Fla. 3d DCA 2015) (recognizing the authority granted to DCF under Chapter 39). In this highly complex area of the law, we rely on DCF counsel and expertise. DCF has an obligation to the court to provide its view of the law relevant to these petitions. DCF shirks its duty to this court and its stewardship obligation over scarce state resources when it elects not to participate in significant proceedings to which it is admittedly a party.[6] DCF's decision not to participate also endangers its own credibility. See Rumph, 667 So. 2d at 999 n.5 (Schwartz, C.J., specially concurring) (remarking "the disparate arguments presented by [DCF], and the

---

2014); Rumph v. V.D., 667 So. 2d 998 n.5 (Fla. 3d DCA 1996) (Schwartz, C.J., specially concurring).

[6] The consequence of non-participation is well-illustrated by a casual perusal of In re Y.V., 160 So. 3d 576 (Fla. 1st DCA 2015), a case similar to the one before us where DCF also did not appear. In that case, the First District reached the opposite conclusion we reach today. If the reasoning of the First District ultimately prevails, DCF should not be heard to complain in the face of a similar private petition where services are requested.

9

unprincipled manner in which it has apparently determined which side it will favor, have caused me to distrust the reliability of any of its legal assertion in these cases"). DCF's responsibilities under Chapter 39 make them especially well-suited to acquaint the court of the applicable laws and their ramifications.

I do not make this point as a matter of sport. If DCF had fulfilled its duty to the court, we might have learned that as long ago as 1997 the United States Congress registered its disapproval of using state dependency laws for the exact purpose they are being used in this case and sought to correct it.[7] See 8 U.S.C. § 1101 (a)(27)(J)(iii); 8 C.F.R. § 204.11(c)(6); Yeboah v. U. S. Dep't of Justice, 345 F.3d 216, 221-222 (3rd Cir. 2003) (citing H.R. Rep. No. 105-405, at 130 (1997), available at 1997 WL 712946 at *1) (explaining that the purpose of adding sub-section (iii) to 8 U.S.C. 1101(a)(27)(J) in 1997 was to "limit the beneficiaries of [Special Immigrant Juvenile Status or SIJS] to those juveniles for whom it was created, namely abandoned, neglected, or abused children"); see also, M.B. v. Quarantillo, 301 F.3d 109, 114 (3rd Cir. 2002) (stating the purpose for the revisions was to "curtail the granting of [SIJS]"). We might also have been alerted

_____

[7] Our self-styled "Amicus Curiae" is no less culpable in this regard. The term "amicus curiae" means friend of the court, not friend of a party. Although we are beyond original meaning now, see Ryan v. CFTC, 125 F.3d 1062, 1063 (7th Cir. 1997) (citing United States v. Michigan, 940 F.2d 143, 164-65 (6th Cir. 1991)), attorneys who file amicus briefs in this court labor under the same code of conduct as all other counsel who appear here, including the obligation to make the court aware of precedent that may be contrary to their interest. See R. Regulating Fla. Bar 4-3.3.

to other state court authority germane to our decision in this case. <u>See</u>, <u>e.g.</u>, <u>H.S.P. v. J.K.</u>, 87 A.3d 255 (Sup. Ct. N.J. 2014) (rejecting a petition for dependency findings where "the express objective of the petition was for M.S. to obtain relief for purposes of his immigration status, rather than for the purpose of obtaining relief from abuse, neglect or abandonment, as his mother had not abused, neglected or abandoned him"); <u>State v. Erick M.</u>, 820 N.W. 2d 639, 648 (Neb. 2012 ) ("Although a literal reading of the statute would seem to permit a state court to ignore whether reunification with an absent parent is feasible, in practice, courts and USCIS officials normally consider whether the petitioner has shown that an absent parent abused, neglected, or abandoned the juvenile.").

One cannot blame these illegal immigrant children for exploring any lawful means of remaining in the United States after arriving here. As Amicus itself admits, "obtaining lawful permanent status will almost always be in the child's best interests." However, B.Y.G.M. and others like her seek to stretch Chapter 39 and the provisions of the SIJS statute beyond their respective purposes. The purpose of the SIJS law is a narrow one: to provide protection to those children who, with their families, entered the United States illegally and who are in danger of being deported along with abusive or neglectful parents or whose parents have abandoned them once in the United States. <u>See</u> <u>Yeboah</u>, 345 F. 3d at 221 (explaining the evolution of the SIJ provision). The purpose of Chapter 39 is to

11

protect families and children in need, not to serve those with a different agenda.

There are multiple lawful avenues of redress in the immigration laws available to these children, including U visas,[8] T visas,[9] waivers promoting family unity, humanitarian reasons, or, even more generally, "the public interest." See Memorandum from Donald Neufeld, Acting Associate Director, Domestic Operations, and Pearl Chang, Acting Chief, Office of Policy & Strategy, to Field Leadership (March 24, 2009), available at http://www.uscis.gov/sites/default/files/USCIAS/Laws/Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf. There is no reason for this court to succumb to those who would misuse our law.

B.Y.G.M. intimates there is no harm in interpreting Chapter 39 literally because she does not seek services from DCF. She is incorrect. DCF is a party – an indispensable party – in each of these cases. A declaration that a child is dependent on the court triggers a host of post-disposition courses of action, including frequent reviews of the child's condition and status. See supra note 1.

---

[8] A U Visa is available to U.S. crime survivors. See Victims of Criminal Activity: U Nonimmigrant Status, U.S. Citizenship & Immigr. Servs., http://www.uscias.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/victims-criminal-activity-nonimmigrant-status (last updated Jan. 09, 2014).
[9] A T Visa is available for trafficking survivors. See Victims of Human Trafficking: T Nonimmigrant Status, U.S. Citizenship & Immigr. Servs., http://www.uscias.gov/humanitarian/victims-human-trafficking-other-crimes/victims-human-trafficking-t-nonimmigrant-status (last updated Jan. 09, 2014).

As can be gleaned from the course of this case alone, both the trial courts and appellate courts expend considerable resources on these cases. The processing of these cases is not free to either the courts or the taxpayers of this state.

These cases are immigration cases, pure and simple. "The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal Government." Truax v. Raich, 239 U.S. 33 (1915); see also Galvan v. Press, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are ... entrusted exclusively to Congress ...."). There has been an increasing blurring of the lines between the federal and state governments and their roles. B.Y.G.M.'s mother has done all she can for her daughter throughout her life with the resources she has been able to obtain. Forced to flee El Salvador for her life in 2004,[10] she left her daughter in the care of grandparents. She faithfully called her daughter at least weekly from the time she arrived in the United States, and has provided her and her caregivers as much support as she has been able to afford. When it became too dangerous for B.Y.G.M. to remain in El Salvador in 2014, B.Y.G.M. (then sixteen-years old) took it upon herself to cross the border. Two weeks later, the Office of Refugee Resettlement delivered B.Y.G.M. to her

---

[10] She was involved in an abusive relationship with her husband, who it is alleged has since moved to New York State to work as a farmworker. The father's whereabouts are unknown and he has nothing to do with B.Y.G.M.

mother in Miami-Dade County, where she was welcomed with open arms and has since that time thrived in her home. Her every need is being met.

We correctly decline to declare B.Y.G.M. dependent on the courts of this state for the sole purpose of assisting her to obtain a legal immigration status. We are not empowered to promote or incent immigration outcomes in conflict with the law and policies of our National Government. See U.S. v. Arizona, 132 S. Ct. 2492, 2498 (2012) (noting that this authority resides, in part, on the National Government's constitutional power to "establish an uniform Rule of Naturalization," U.S. Const., Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations). B.Y.G.M.'s recourse in this case is to the United States Congress, however cumbersome that route may be.

I join the opinion of the majority in this case.