# First District Court of Appeal
## State of Florida

_____

No. 1D17-1713
_____

DEPARTMENT OF HEALTH and
THE PUBLIC HEALTH TRUST OF
MIAMI-DADE COUNTY, FLORIDA,
d/b/a JACKSON SOUTH
COMMUNITY HOSPITAL,

    Appellants,

    v.

SHANDS JACKSONVILLE MEDICAL
CENTER, INC., d/b/a UF HEALTH
JACKSONVILLE, JFK MEDICAL
CENTER LIMITED PARTNERSHIP,
d/b/a JFK MEDICAL CENTER;
ORANGE PARK MEDICAL CENTER,
INC., d/b/a ORANGE PARK
MEDICAL CENTER; FLORIDA
HEALTH SCIENCES CENTER, INC.,
d/b/a TAMPA GENERAL HOSPITAL;
LEE MEMORIAL HEALTH SYSTEM,
d/b/a LEE MEMORIAL HOSPITAL;
BAYFRONT HMA MEDICAL
CENTER, LLC, d/b/a BAYFRONT
HEALTH-ST. PETERSBURG, and
ST. JOSEPH'S HOSPITAL, INC.,
d/b/a ST. JOSEPH'S HOSPITAL,

    Appellees.

_____

No. 1D17-1717
_____

JFK MEDICAL CENTER LIMITED
PARTNERSHIP d/b/a JFK MEDICAL
CENTER; ORANGE PARK MEDICAL
CENTER, INC., d/b/a ORANGE
PARK MEDICAL CENTER, and THE
PUBLIC HEALTH TRUST OF MIAMI-
DADE COUNTY, FLORIDA, d/b/a
JACKSON SOUTH COMMUNITY
HOSPITAL,

    Appellants,

    v.

SHANDS JACKSONVILLE MEDICAL
CENTER, INC., d/b/a UF HEALTH
JACKSONVILLE, DEPARTMENT OF
HEALTH, FLORIDA HEALTH
SCIENCES CENTER, INC., d/b/a
TAMPA GENERAL HOSPITAL, LEE
MEMORIAL HEALTH SYSTEM d/b/a
LEE MEMORIAL HOSPITAL,
BAYFRONT HMA MEDICAL
CENTER, LLC, d/b/a BAYFRONT
HEALTH-ST PETERSBURG, and ST.
JOSEPH'S HOSPITAL, INC., d/b/a
ST. JOSEPH'S HOSPITAL,

    Appellees.
_____

On appeal from the Division of Administrative Hearings.
Garnett W. Chisenhall, Administrative Law Judge.

November 13, 2018

2

PER CURIAM.

These two appeals[1] seek review of an administrative order that found proposed rules of the Department of Health ("the Department") for allocating the minimum number of trauma centers throughout the state to be an invalid exercise of delegated legislative authority. This case ultimately revolves around the Department's interpretation of the word "need," a term undefined by the applicable statutes.[2] Under the prior rules, the Department interpreted the number of trauma centers "needed" as a maximum. In the proposed rules, the Department sought to reflect its new interpretation that the number "needed" was a minimum, rather than a maximum. The Department asserts the "sub-cap" it created by promulgating maximums was not within its delegated statutory authority. Because the term "need" is ambiguous as to whether it refers to a maximum or minimum, and the Department's interpretation is given deference when it is within the range of reasonable interpretations, we agree and reverse.

## BACKGROUND

In 1985, the Legislature established a statewide trauma system. The law governing the administration of the trauma system is set forth in Part II of Chapter 395, Florida Statutes. In order to provide timely access and uniformity in trauma care, the state was divided into nineteen Trauma Service Areas ("TSAs"), each of which should provide at least one Level I or II trauma center, §§ 395.402(4)(a) & (b), Fla. Stat. (2016). However, the Legislature determined there should be no more than a total of 44 trauma centers within the State. § 395.402(4)(c), Fla. Stat. (2016).

---

[1] The appeals at issue were consolidated for travel and are now consolidated for disposition.

[2] The Legislature substantially amended the applicable statutes in this case, in particular sections 395.402 and 395.4025, after oral argument. The effect of this amendment is discussed below. Unless otherwise indicated, the statutory citations listed here refer to the 2016 version of these statutes.

Beyond these statutory guidelines, the primary responsibility for planning, establishing, and implementing the trauma system was delegated to the Department. § 395.40(3), Fla. Stat. To ensure an integrated trauma system across the state, the Department conducted an annual assessment to determine how many trauma centers were needed. § 395.402(2)(b), Fla. Stat. (2016). Based on the results of this assessment, the Department "allocate[d], by rule, the number of trauma centers needed for each [TSA]." § 395.402(4)(b), Fla. Stat. (2016).

In 2014, the Department promulgated rules (the "Old Rules") implementing a scoring system to determine how many trauma centers were needed per TSA. *See* Fla. Admin. Code R. 64J-2.010. Based on the resulting scores, the Department assigned a maximum number of trauma centers for each TSA.

After implementation of this criteria, the Department found that with each new trauma center, the associated TSA's assessed need would be reduced for the following year. Concerned that this could potentially lead to TSAs with a maximum "need" of zero, the Department sought to initiate rulemaking to revise the rules to provide that the scores should be considered a *minimum* rather than a maximum.

On September 1, 2016, the Department proposed the series of amendments to rules 64J-2.010, 64J-2.012, 64J-2.013, and 64J-2.016 (the "Proposed Rules"). The Proposed Rules utilized the same methodology for assessing the numerical need for trauma centers in each TSA but resulted in the approval of a minimum of 25 trauma centers. The rules also created a "tie-breaker" system in the event the number of trauma center applicants or provisional trauma centers would cause the state to exceed the statutory cap.

Appellees[3] filed rule challenge petitions asserting, among other things, that the Proposed Rules exceeded the Department's

_____

[3] The following entities challenged the validity of the Proposed Rules in a consolidated proceeding: Shands Jacksonville Medical Center, Inc. d/b/a UF Health Jacksonville ("Shands"), Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("Tampa General"), Lee Memorial Health System d/b/a Lee Memorial Hospital ("Lee Memorial"), Bayfront HMA Medical

4

rulemaking authority; enlarged, modified, or contravened the laws being implemented; or vested the Department with unbridled discretion.

At the final hearing on this matter, the Department's representative was asked a number of hypothetical questions regarding the trauma centers approval process under the Proposed Rules. In a situation where there were 43 approved trauma centers in the state but one TSA did not have a Level I or II trauma center, the Department stated it would hold the 44th spot open for the TSA without a trauma center. It further represented the same outcome would occur if there were 43 approved centers and one TSA had not reached its minimum under the Proposed Rules.

The Administrative Law Judge ("ALJ") held that while the Department did not exceed its grant of rulemaking authority and the proposed rules were not arbitrary or capricious, the rules contravened the laws being implemented and vested unbridled discretion in the Department.

MOOTNESS

After oral argument in this case, the Legislature substantially amended sections 395.402 and 395.4025. Ch. 2018-66, Laws of Florida. As stated above, under prior statutes the Department was tasked with "allocat[ing], by rule, the number of trauma centers needed for each trauma service area." § 395.402(4)(b), Fla. Stat.

---

Center, LLC d/b/a Bayfront Health – St. Petersburg ("Bayfront"), St. Joseph's Hospital Inc., d/b/a St. Joseph's Hospital ("St. Josephs,"). Each of these parties operates a trauma center.

The following entities intervened in this proceeding on behalf of the Department: JFK Medical Center Limited Partnership, d/b/a JFK Medical Center ("JFK"), The Public Health Trust of Miami-Dade County, Florida d/b/a Jackson South Community Hospital ("Public Health Trust"), Orange Park Medical Center, Inc. d/b/a Orange Park Medical Center ("Orange Park"). JFK and Public Health Trust submitted letters of intent to apply to operate as a trauma center; Orange Park already operates a provisional trauma center.

5

(2016). *See also* § 395.4025(1), Fla. Stat. (2016) (requiring that "the department shall establish the approximate number of trauma centers needed to ensure reasonable access to high-quality trauma services"). However, under these statutes as revised in 2018, the Legislature itself now provides the maximum number of trauma centers for each service area. § 395.402(1)(c), Fla. Stat. (2018). No longer does the Department have the authority to select or establish the appropriate number of trauma centers. § 395.4025(1), Fla. Stat. (2018). The new statutes prohibit the Department from approving trauma centers—or even accepting letters of intent—for service areas that have already met the new statutory maximums, absent certain extenuating circumstances. § 395.4025(3) & (4), Fla. Stat. (2018). In other words, the entire statutory basis for the Proposed Rules at issue in this case has been repealed.

We find that the rule challenge here is moot. *See Montgomery v. Dep't of Health & Rehab. Servs.*, 468 So. 2d 1014 (Fla. 1st DCA 1985). "A moot case generally will be dismissed." *Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992). However, a moot appeal will not be dismissed if any of three exceptions apply: (1) the issues are of great public importance; (2) the issues are likely to recur; and (3) collateral legal consequences flow from the issues to be resolved that may affect the rights of a party. *Schweickert v. Citrus County Florida Bd.*, 193 So. 3d 1075, 1078 (Fla. 5th DCA 2016). At the least, collateral consequences of this case that may affect the rights of a party exist, regardless of the mootness of the Proposed Rule, in particular, the challengers' right to attorney's fees under section 120.595(2), Florida Statutes. This possible right to attorney's fees is sufficient for this court to decide this case in spite of it mootness. *See Soud v. Kendale, Inc.*, 788 So. 2d 1051, 1053 (Fla. 1st DCA 2001) (rendering an opinion on the merits in a moot appeal because the appellee sought attorney's fees in the trial court after dismissal).[4] For this reason, we proceed to the merits of this appeal.

---

[4] We find that *Lund v. Dep't of Health*, 708 So. 2d 645 (Fla. 1st DCA 1998), does not require a different conclusion. In *Lund* we dismissed a moot appeal in a license disciplinary action, finding that the possibility of attorney's fees pursuant to section 120.595*(5)* does not constitute a collateral legal consequence. *Id.* at 646. However, payment of attorney's fees under subsection (5) of

ANALYSIS

We review the ALJ's conclusions of law and determinations of statutory interpretation de novo. *See J.S. v. C.M.*, 135 So. 3d 312, 315 (Fla. 1st DCA 2012); *Abbott Labs. v. Mylan Pharms., Inc.*, 15 So. 3d 642, 654 (Fla. 1st DCA 2009). To the extent that an issue depends on the ALJ's finding of fact, we only review whether the finding is supported by competent, substantial evidence. *Abbott Labs.*, 15 So. 3d at 654.

The ALJ determined that the Proposed Rules were an invalid exercise of delegated legislative authority because (1) it would render superfluous the requirement that trauma centers be located in a TSA with a need under the prior version of section 395.4025(5) where all TSAs would always have a need; (2) the rule minimums would implicitly supersede the statutory minimum provided by the prior version of section 395.402(4); and (3) it vests the Department with unbridled discretion to permit it to reserve trauma center slots for TSAs that have not satisfied their rule minimum. *See* § 120.52(8)(c) & (d), Fla. Stat.

---

that statute is conditional, permitted only when the appellate court determines that the appeal was "frivolous, meritless, or an abuse of the appellate process, or that the agency action which precipitated the appeal was a gross abuse of the agency's discretion." Fees here are sought under section 120.595*(2)*, which requires that "a judgment or order *shall be rendered* against the agency for reasonable costs and reasonable attorney's fees," "[i]f the appellate court or administrative law judge declares a proposed rule or portion of a proposed rule invalid," unless "the agency demonstrates that its actions were substantially justified or special circumstances exist which would make the award unjust." Stated differently, fees under subsection (2) are required unless an exception applies, whereas fees under subsection (5) are wholly conditional. We find this distinction to be relevant here, so that the request for fees under section 120.595(2) allows us to decide this moot appeal.

First, the prior version of section 395.4025(5) provided that provisional trauma centers "shall be located in a trauma service area *that has a need* for such a trauma center." (emphasis added). The ALJ held that because the Department's allocation of minimum need would mean all TSAs would "always" have a need, the Proposed Rules render the prior version of section 395.4025(5) superfluous. The ALJ's holding is not accurate under the statute or the Proposed Rules.

There is nothing in the prior version of section 395.4025(5) that bars multiple TSAs from having needs at the same time. So long as the state is under the statutory cap, multiple TSAs may find an additional trauma center to be desirable or useful despite the fact that it has already met its minimum requirements by statute or rule. *See Need, Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/need (last visited Aug. 9, 2018) (defining "need" as "a lack of something requisite, desirable, or useful").

Further, TSAs would not "always" have a need. Once the former statewide cap of 44 trauma centers was met, no TSA would have a need. *See* § 395.402(4)(c), Fla. Stat. (2016). If the state were nearing the cap, priority would have been given to any TSA that had not met its minimum provided by the Proposed Rules. The ability to reserve slots is implied in the Department's use of the word "minimum" in the Proposed Rules. Accordingly, the Department would deny any trauma center application in a TSA that had already met its prescribed rule minimum when doing so would foreclose the opportunity for another TSA to meet its rule minimum.

This is all within its authority, as the Department was tasked with establishing "the *approximate number* of trauma centers needed to ensure *reasonable access* to high-quality trauma services." *See* § 395.4025(1), Fla. Stat. (2016) (emphasis added). The Legislature's use of the words "approximate" and "reasonable" makes unlikely that it intended "need" to refer to a defined and limited maximum. The former section 395.4025(5) was not rendered superfluous or contravened by the Proposed Rules.

Second, the prior version of section 395.402(4) provided both a floor for the individual TSAs (one) and a ceiling for the state (44).

8

§ 395.402(4)(b) & (c), Fla. Stat. (2016). The ALJ held that the Proposed Rules implicitly superseded the prior version of section 395.402(4), which already had established a minimum number of trauma centers per TSA.

The statutory floor in the prior version of section 395.402(4) provided a universal minimum without consideration of a TSA's actual or approximate need. Between the floor and the ceiling, the Department was tasked with *allocating* (distributing or designating) the remaining 25 available trauma centers slots amongst the TSAs based upon their approximate need. §§ 395.402(4)(b), 395.4025(1), Fla. Stat. (2016); s*ee Allocate, Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/allocate (last viewed Aug. 9, 2018) (defining "allocate" as either (1) "to apportion for a specific purpose or to particular persons or things : distribute" or (2) "to set apart or earmark : designate").

It is reasonable that the Department would provide each TSA's minimum need to support the purpose of the statute, which is access. The Proposed Rules leave open the opportunity to distribute all available trauma center slots, if needed. The Old Rules actually rendered the prior version of section 395.402(4) superfluous in providing for maximum of 27 trauma centers for the state, prohibiting it from ever reaching the 44 total trauma centers allowed.

Third, the ALJ held that the Proposed Rules vested the Department with unbridled discretion insofar as it could reserve trauma center slots under the statutory cap for TSAs that had one trauma center—satisfying the statutory minimum under the prior version of section 395.402(4)(b)—but that had not yet met their rule minimum. The ALJ held: "In sum, the Proposed Rules are invalid because they confer discretion on the Department that is not articulated in the statutes the Proposed Rules would implement."

As discussed above, the Department was tasked with allocating the approximate number of trauma center slots to the TSAs to ensure reasonable access to trauma care. It was rational for the Department to reserve slots for TSAs without sufficient trauma centers to satisfy their need assessment under the

Proposed Rules to ensure reasonable access. Because the statute laid out the framework with little guidance regarding implementation, the Legislature granted the Department wide berth to make the pure policy decisions that would support the interpretation of need as a maximum *or* minimum. Accordingly, we find the Proposed Rules do not vest the Department with unbridled discretion.

CONCLUSION

The final order is reversed and the cause remanded in accordance with this opinion.

REVERSED.

MAKAR, WINOKUR, and M.K. THOMAS, JJ., concur.

—————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

—————————————

William Dean Hall, III, Marc W. Dunbar, and Daniel R. Russell of Jones Walker LLP, Tallahassee; Jason Gonzalez and Amber Stoner of Shutts & Bowen LLP, Tallahassee; and Jay Patrick Reynolds, Chief Legal Counsel, and Michael J. Williams, Assistant General Counsel, Florida Department of Health, Tallahassee, for Department of Health.

Thomas F. Panza, Jennifer K. Graner, Brian S. Vidas, and Paul C. Buckley of Panza, Maurer & Maynard, P.A., Fort Lauderdale, for The Public Health Trust of Miami-Dade County, Florida.

Stephen A. Ecenia, J. Stephen Menton, and Gabriel F. V. Warren of Rutledge Ecenia, P.A., Tallahassee, for JFK Medical Center and Orange Park Medical Center.

Seann M. Frazier and Marc Ito of Parker, Hudson, Rainer &

Dobbs, LLP, Tallahassee, for UF Health Jacksonville, Lee Memorial Health System, and Tampa General Hospital.

Karen A. Putnal and Jon C. Moyle of Moyle Law Firm, Tallahassee, for St. Joseph's Hospital.

Geoffrey D. Smith, Timothy B. Elliott and Corinne Porcher of Smith & Associates, Tallahassee, for Bayfront Medical Center.